ISHEE, J.,
 

 for the Court.
 

 ¶ 1. A jury in the Circuit Court of Franklin County found Danny Hurt guilty of armed robbery. Hurt was sentenced to twenty-five years in the Mississippi Department of Corrections as a habitual offender, without eligibility for parole or probation. Hurt’s sentence was also enhanced by Mississippi Code Annotated section 99-19-351(Rev.2007) because the victim of the armed robbery was a person over the age of sixty-five years. Hurt was ordered to pay restitution to the victim in the amount of $1,700 and all court costs, including attorney’s fees. Aggrieved by the circuit court’s ruling, Hurt appeals, alleging that the prosecutor’s comments during trial regarding his post-arrest, pre-
 
 Miranda
 
 silence violated his Fifth Amend
 
 *1193
 
 ment rights and thereby denied him a fundamentally fair trial. Finding no reversible error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Seventy-nine-year-old Curtley Hayes was the victim of an armed robbery on April 25, 2007. Hayes routinely checked several oil wells in Franklin County in his work as an independent oilfield pumper. Hayes was in the process of checking an oil well when someone came up from behind, held a knife to his throat, and hit him on the back of the head. The attacker knocked Hayes to the ground and took all the cash from his wallet. The attacker then threw Hayes’s cell phone into the woods, knocked off his glasses, and stole his truck. After the robbery, Hayes walked to a nearby home and contacted the Franklin County Sheriffs Department. When Sheriff James Newman arrived, Hayes described his attacker as about five-foot-nine and approximately 165 pounds. However, Hayes was unable to describe his attacker’s face because his attacker’s head and body were completely covered.
 

 ¶ 3. Sheriff Newman soon identified Hurt as a suspect in the armed robbery. Hayes knew Hurt as a result of Hurt’s previous work at Cornwell Well Services (Cornwell) repairing oil wells. Hayes had visited Cornwell in the past and had coffee with Hurt on several occasions. Hayes testified at trial that everyone, including Hurt, was aware of Hayes daily routine of checking the oil wells. It was discovered that Hurt was aware of the exact route Hayes generally took to inspect the oil wells. Hayes also testified that it was well known by the workers at Cornwell that he carried cash with him on his daily route.
 

 ¶ 4. A warrant was issued for Hurt’s arrest, and Sheriff Newman and Troy Travis of the Mississippi Highway Patrol traveled to New Albany to arrest him. Hurt was told at the time of the arrest that he was being charged with the armed robbery of Hayes that occurred on April 25, 2007. Sheriff Newman testified that Hurt never said a word after his arrest on the trip back until they stopped at the Brookhaven Highway Patrol substation. Sheriff Newman brought Hurt into the substation to interview him, and at that time, he first advised Hurt of his
 
 Miranda
 
 rights. According to Sheriff Newman, Hurt stated that he had about fifteen or twenty witnesses that would put him in New Albany at the time of the armed robbery. Hurt refused to give the names of any of the witnesses, and he refused to make any other statements. Sheriff Newman testified that at that point, Hurt became violent and said, “If you take these cuffs off of me, I’ll whip you’re a — .” The officers then transported Hurt to the Franklin County Jail. Upon arrival, Sheriff Newman attempted to talk to both Hurt and Bridget Jones, who had identified Hurt as a suspect. However, Hurt began screaming at Jones, calling her a “ratty whore” and asking “why did she rat [Hurt] out.”
 

 ¶ 5. Jones, an acquaintance of Hurt, who sold him illegal drugs every few days, testified against him at trial. Jones claimed that she was with Hurt at the time of the robbery. Jones testified that Hurt came to her home, and she agreed to ride with him to pick up some money from Hayes. Hurt parked his vehicle near a church and left her in the vehicle while he went to collect the money from Hayes. Jones testified that Hurt soon returned driving Hayes’s truck. When he returned, he was in a hurry. He parked Hayes’s truck, and he quickly jumped back in his own vehicle and drove away quickly. Jones claimed that Hurt later confessed to her that he had robbed Hayes. Possessing this infor
 
 *1194
 
 mation, Jones visited Hayes at his home and identified Hurt as the perpetrator of the armed robbery. Jones then relayed the information to Sheriff Newman. Jones was subsequently arrested for armed robbery, and she took the sheriff to the place where she had waited for Hurt. She said that Hurt passed her notes while she was in jail and told her to keep her mouth shut.
 

 ¶ 6. Arthur Ball also testified against Hurt. Ball was incarcerated in an adjoining cell to Hurt for a short period of time. Ball claimed that Hurt admitted to committing the armed robbery, and he said that he witnessed Hurt attempting to pass notes to Jones in jail.
 

 ¶ 7. During the State’s opening statement and during its case-in-chief, the prosecutor commented on Hurt’s post-arrest silence for most of the trip from New Albany to Franklin County. The prosecutor questioned why Hurt would remain silent about his alibi until they reached Brookhaven, preventing Sheriff Newman from interviewing potential alibi witnesses while he was still in New Albany. During Sheriff Newman’s testimony, he repeatedly stated that Hurt made no comment during the trip from New Albany to the Brookhaven substation. Hurt also testified in his own defense at trial. During the cross-examination, the prosecutor questioned why Hurt did not ask Sheriff Newman any details about the crime but instead remained silent upon his arrest. Hurt responded that: “I am being transported. There’s no need for conversation.” Again, in closing arguments, the prosecution referred to Hurt’s initial silence for an almost three-hour trip after his arrest before he disclosed he had alibi witnesses.
 

 ¶ 8. Hurt was indicted on September 11, 2007, under Mississippi Code Annotated section 97-3-79 (Rev.2006) for armed robbery, enhanced by Mississippi Code Annotated section 99-19-351 because the victim was a person over the age of sixty-five. At trial, Hurt moved for a directed verdict of acquittal at the close of the State’s case and again at the close of trial, which the circuit court denied Following the jury trial, Hurt was found guilty of armed robbery and was also found to be a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev.2007). Hurt was sentenced to twenty-five years in the Mississippi Department of Corrections, without eligibility for parole or probation. Hurt was also ordered to pay restitution to the victim in the amount of $1,700 and to pay all court costs, including attorney’s fees.
 

 DISCUSSION
 

 Whether it was error to allow the prosecutor’s comments at trial.
 

 ¶ 9. Hurt argues on appeal that his constitutional rights were violated by the prosecutor’s repeated references to Hurt’s post-arrest, pr
 
 e-Miranda,
 
 silence during the trial. Hurt contends that the case against him consisted primarily of unreliable testimony from an accomplice, Jones, and from Ball, an untrustworthy jailhouse snitch. Therefore, Hurt argues that the State improperly augmented its case with questions and comments regarding Hurt’s silence after his arrest, using his silence as an implicit admission of guilt. During the State’s opening statement, the prosecutor stated the following:
 

 Now, Sheriff Newman is going to tell you about he and Mr. Travis went to New Albany to get Danny Hurt.... That they went up there, they picked him up, and on the ride home, Mr. Hurt said absolutely nothing to either one of them. Now, he’s told what he’s charged with, armed robbery of Curtley Hayes that occurred on April 25th, last year. They drive all the way from New Albany
 
 *1195
 
 to Franklin County, and Mr. Hurt says absolutely .nothing about it. They stopped in Brookhaven ... and at that time, Mr. Hurt says, “Oh, that’s not-I couldn’t have possibly been involved in that because I was in New Albany, Mississippi, on April the 25th.” Now they just left New Albany where the sheriff could have interviewed witnesses, gotten names and gone right then. He didn’t say a word when the sheriff first put him in the car. He waits until he gets to Brookhaven....
 

 Similarly, during the State’s questioning of Sheriff Newman, the following exchange took place:
 

 Q: Would you tell us what happened on [the trip from New Albany to Brookhaven]. What was said, what, if anything? What happened?
 

 A: [Investigator Travis] and myself talked a little bit. Danny never said a word.
 

 Q: Did he ask you anything about what he was being charged with or anything like that?
 

 A: No, sir.
 

 Q: No conversation at all?
 

 A: He didn’t to me.
 

 Q: Okay. Did he say anything to you before he left the sheriffs department in Union County?
 

 A: Didn’t say nothing to me.
 

 Q: He just got in the car?
 

 A: That’s right.
 

 Q: And rode all the way back down here?
 

 A: We stopped at Brookhaven substation first.
 

 [[Image here]]
 

 Q: Sheriff, you indicated that you and Investigator Travis had returned from New Albany. About how long did that trip take in your car back down to Brookhaven?
 

 A: About three hours.
 

 ¶ 10. Hurt initially notes that it is improper for a prosecutor to comment on a defendant’s post-arrest,
 
 post-Miranda
 
 silence, but he acknowledges that commenting on a defendant’s post-arrest,
 
 pre-Mi-randa
 
 silence has not been held to be reversible error under Mississippi law. Hurt argues that such reasoning is logically inconsistent and that both
 
 pre-Miranda
 
 and
 
 post-Miranda
 
 silence should not be used against a defendant at trial. Hurt contends that the use of his silence before he was given
 
 Miranda
 
 warnings should only be permissible when used to impeach his trial testimony. Hurt concedes that there was no contemporaneous objection to the comments with which he now takes issue, but he argues that this Court should review the issue under plain error. Based on this sole issue, Hurt asks that his conviction be reversed and his case remanded for a new trial.
 

 ¶ 11. The State responds that the matter is procedurally barred because Hurt failed to object, and additionally, that the comments regarding Hurt’s silence did not constitute plain error. The State submits that the prosecutor merely commented on Hurt’s decision not to mention his alibi until three hours after his arrest, upon arriving in Brookhaven, even though his alleged alibi witnesses were located in New Albany, where he was arrested. According to the State, the comments were not regarding Hurt’s silence, but were regarding his decision not to tell the officers about the alleged witnesses until they traveled three hours away from their location. Finally, the State argues that even if allowing the comments was error, the remarks did not rise to the level of prejudicing Hurt’s case.
 

 ¶ 12. The test to determine whether reversal is required as a result of
 
 *1196
 
 a prosecutor’s improper comment at trial “is whether or not the natural and probable effect of the statement is to create an unjust prejudice against the accused so as to result in a decision influenced by prejudice.”
 
 Jackson v. State,
 
 924 So.2d 531, 542(¶ 36) (Miss.Ct.App.2005) (citing
 
 Harvey v. State,
 
 666 So.2d 798, 801 (Miss.1995)). “The prosecutor’s remarks are viewed in light of the entire trial.”
 
 Jackson,
 
 924 So.2d at 542(¶ 36) (citing
 
 Donnelly v. DeChristoforo,
 
 416 U.S. 637, 645, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). However, “[wjhere it was alleged that the prosecutor made improper comments during both opening and closing arguments as well as while examining witnesses, but no objections were raised at tidal, the defendant who fails to make a contemporaneous objection must rely on plain error to raise the assignment on appeal.”
 
 Jackson,
 
 924 So.2d at 542(¶ 35) (quoting
 
 Watts v. State,
 
 733 So.2d 214, 233(¶ 53) (Miss.1999)). Similarly, Hurt must rely on plain error regarding his claim that it was error to allow Sheriff Newman to testify regarding Hurt’s silence.
 
 See Moss v. State,
 
 977 So.2d 1201, 1213(¶ 27) (Miss.Ct.App.2007) (applying plain-error analysis when no contemporaneous objection was made at trial when a witness gave objectionable testimony).
 

 ¶ 13. It has long been recognized that “[a] defendant has the right to remain silent following arrest, and not have that silence used against him.”
 
 Carr v. State,
 
 655 So.2d 824, 845 (Miss.1995). Regarding the State’s cross-examination of Hurt with his silence: “In
 
 Doyle v. Ohio,
 
 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the [United States] Supreme Court held that the Due Process Clause ordinarily prohibits the use of a defendant’s post-
 
 Miranda
 
 silence to impeach his trial testimony.”
 
 United States v. Salinas,
 
 480 F.3d 750, 756 (5th Cir.2007). The Fifth Circuit Court of Appeals further explained in
 
 Salinas
 
 that “[although the
 
 Doyle
 
 line of cases focused primarily on due process, in each of those cases, the prosecution used the defendant’s silence only to impeach the defendant’s trial testimony, so the privilege against self-incrimination was inapplicable.”
 
 Id.
 
 at 758 n. 6. As the Mississippi Supreme Court noted in
 
 McGrone v. State,
 
 807 So.2d 1232, 1235(¶ 11) (Miss.2002) quoting
 
 Fletcher v. Weir,
 
 455 U.S. 603, 606-07, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982):
 

 [I]n
 
 Anderson v. Charles,
 
 447 U.S. 404, 407-08, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), [the United States Supreme Court] explained that use of silence for impeachment was fundamentally unfair in
 
 Doyle
 
 because
 
 ‘Miranda
 
 warnings inform a person of his right to remain silent and assure him, at least implicitly, that his silence will not be used against him....
 
 Doyle
 
 bars the use against a criminal defendant of silence maintained after receipt of governmental assurances.”
 

 ¶ 14. In
 
 McGrone,
 
 807 So.2d at 1232(¶ 1), the Mississippi Supreme Court addressed the issue of cross-examining a defendant with his post-arrest,
 
 pre-Mi-randa
 
 silence. Unlike the present case, in
 
 McGrone,
 
 the references to the defendant’s post-arrest,
 
 pre-Miranda
 
 silence were made during cross-examination of the defendant for impeachment purposes, and the prosecutor additionally referred to McGrone’s silence during the State’s closing argument.
 
 Id.
 
 at 1233(¶ 3). The Mississippi Supreme Court considered the issue of whether the defendant could “be impeached at trial on his failure to provide, at some time after his arrest, his version of the events leading up to his arrest.”
 
 Id.
 
 at 1232 (¶ 1). Initially, McGrone’s conviction was reversed and the case remanded by this Court, and the Mississippi Supreme Court summarized that holding as follows:
 

 
 *1197
 
 [I]f it was improper for the State to cross-examine a defendant regarding his silence after being arrested and read his
 
 Miranda
 
 warnings, then it was also improper to cross-examine McGrone in this manner, where there was no evidence in the record as to whether he had been given
 
 Miranda
 
 warnings or not. The Court of Appeals found that a defendant would have the protection of the Fifth Amendment in either case, and if cross-examination was prohibited under the first scenario, it was also prohibited under the second.
 

 Id.
 
 at 1233-34(¶ 4). In reversing this Court, the Mississippi Supreme Court cited the United States Supreme Court case of
 
 Fletcher,
 
 455 U.S. at 607, 102 S.Ct. 1309 in support of its decision.
 
 McGrone,
 
 807 So.2d at 1235(¶ 11). In
 
 Fletcher,
 
 the United States Supreme Court held that:
 

 In the absence of the sort of affirmative assurances embodied in the
 
 Miranda
 
 warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to post[-]arrest silence when a defendant chooses to take the stand. A State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which post[-]arrest silence may be deemed to impeach a criminal defendant’s own testimony.
 

 Fletcher,
 
 455 U.S. at 607, 102 S.Ct. 1309.
 

 ¶ 15. Following Hurt’s testimony, the prosecutor questioned Hurt on cross-examination about his silence and mentioned it again during the State’s closing argument. Under
 
 Fletcher
 
 and
 
 McGrone,
 
 the cross-examination of Hurt concerning his post-arrest, pr
 
 e-Miranda
 
 silence and the prosecutor’s comments during closing arguments do not constitute error. Due process was not offended, and Hurt’s privilege against self-incrimination was not at issue because he had chosen to testify.
 

 ¶ 16. Unlike the cases discussed previously, Hurt’s pr
 
 e-Miranda
 
 silence was initially brought up, not during cross-examination, but during the State’s opening statement and then again during the State’s direct examination of Sheriff Newman. In such situation, the Fifth Amendment is implicated because, at the time the prosecutor made the comment and Sheriff Newman testified concerning Hurt’s silence, Hurt had not taken the stand. Neither the United States Supreme Court nor our Mississippi Supreme Court has addressed the specific issue at hand, namely, whether the use of a defendant’s post-arrest,
 
 pre-Miranda
 
 silence as substantive evidence of a defendant’s guilt violates the Fifth Amendment privilege against self-incrimination.
 

 ¶ 17. Unfortunately, Hurt failed to raise an objection to the prosecution’s comments regarding his post-arrest, pre-
 
 Miranda
 
 silence. As such, this Court is limited to reviewing this issue under a plain-error analysis. The law on plain error is as follows:
 

 A review under the plain[-]error doctrine is necessary when a party’s fundamental rights are affected, and the error results in a manifest miscarriage of justice.
 
 Williams v. State,
 
 794 So.2d 181, [187] [ (¶ 23) ] (Miss.2001) [ (overruled on other grounds) ]. To determine if plain error has occurred, we must determine “if the trial court has deviated from a legal rule, whether that error is plain, clear or obvious, and whether the error has prejudiced the outcome of the trial.”
 
 Cox v. State,
 
 793 So.2d 591, 597 [ (¶ 22) ] (Miss.2001).
 

 McGee v. State,
 
 953 So.2d 211, 215(¶ 8) (Miss.2007).
 

 
 *1198
 
 ¶ 18. A split exists among the federal circuit courts regarding the issue of post-arrest,
 
 -pre-Miranda
 
 silence being introduced against a defendant in the prosecution’s case-in-chief. In
 
 Salinas,
 
 the Fifth Circuit summarized that split and noted that the Seventh, Ninth, and D.C. Circuits have all held that the use of post-arrest,
 
 pre-Miranda
 
 silence as substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination.
 
 Salinas,
 
 480 F.3d at 758-59 (citing
 
 United States v. Velarde-Gomez,
 
 269 F.3d 1023, 1028-30 (9th Cir.2001);
 
 United States v. Whitehead,
 
 200 F.3d 634, 637-39 (9th Cir.2000);
 
 United States v. Moore,
 
 104 F.3d 377, 384-90 (D.C.Cir.1997);
 
 United States v. Hernandez,
 
 948 F.2d 316, 322-23 (7th Cir.1991));
 
 see also United States v. Burson,
 
 952 F.2d 1196, 1201 (10th Cir.1991) (finding the same for the Tenth Circuit). In addition, the First and Sixth Circuits have held that the substantive use of even
 
 pre-arrest
 
 silence can violate a defendant’s right against self-incrimination.
 
 Salinas,
 
 480 F.3d at 759 (citing
 
 Combs v. Coyle,
 
 205 F.3d 269, 280-83 (6th Cir.2000);
 
 Coppola v. Powell,
 
 878 F.2d 1562, 1567-68 (1st Cir.1989)). The Second Circuit has also made the assumption that the use of a defendant’s post-arrest,
 
 pre-Miranda
 
 silence is likely a violation of the defendant’s rights.
 
 Salinas,
 
 480 F.3d at 759 n. 9; (citing
 
 United States v. Caro,
 
 637 F.2d 869, 876 (2d Cir.1981)). “The Fourth, Eighth, and Eleventh Circuits have, on the other hand, found the substantive use of post-arrest,
 
 pre-Miranda
 
 silence during the prosecution’s case-in-chief permissible.”
 
 Id.
 
 at 759 (citing
 
 United States v. Frazier,
 
 408 F.3d 1102, 1109-11 (8th Cir.2005);
 
 United States v. Rivera,
 
 944 F.2d 1563, 1567-68 (11th Cir.1991);
 
 United States v. Love,
 
 767 F.2d 1052, 1063 (4th Cir.1985)).
 

 ¶ 19. The Fifth Circuit has yet to rule on the present issue. In
 
 Salinas,
 
 the Fifth Circuit ultimately declined to address the issue of whether use of the defendant’s post-arrest, pr
 
 e-Miranda
 
 silence as substantive evidence of guilt violated the Fifth Amendment.
 
 Salinas,
 
 480 F.3d at 759. In that case, the prosecution made comments regarding Mario Alfredo Salinas’s post-arrest, pr
 
 e-Miranda
 
 silence during its opening statement and also questioned a police officer regarding Salinas’s silence during its case-in-chief.
 
 Id.
 
 at 755. Salinas argued that these comments were improper and were used as substantive evidence of his guilt.
 
 Id.
 
 at 754. The Fifth Circuit found that Salinas did not properly preserve his claim of error regarding the prosecution’s comments on his post-arrest,
 
 pre-Miranda
 
 silence in its case-in-chief.
 
 Id.
 
 at 755. Although Salinas’s attorney objected at trial to each of the references to his silence, and the trial court sustained each objection, Salinas never requested a mistrial.
 
 Id.
 
 at 755-56. The Fifth Circuit concluded that Salinas received all the relief he had requested and that it would only “consider the challenged comments under the plain[-]error standard.”
 
 Id.
 
 at 756. The Fifth Circuit determined that it did not need to reach the ultimate issue of “whether the prosecution can, at trial, introduce substantive evidence that the defendant remained silent after he was arrested and taken into custody, but before he was given the
 
 Miranda
 
 warnings,” in part, because the law was unclear.
 
 Id.
 
 at 758. Relevant to the present issue, the Fifth Circuit found that “[bjecause this circuit’s law remains unsettled and the other federal circuits have reached divergent conclusions on this issue, even assuming that the prosecutor’s comments were improper, Salinas cannot satisfy the second prong of the plain[-]error test — that the error be clear under existing law.”
 
 Id.
 
 at 759.
 

 ¶ 20. This issue was again raised in
 
 United States v. Pando Franco,
 
 503 F.3d
 
 *1199
 
 389, 395 (5th Cir.2007). In
 
 Pando Franco,
 
 the Fifth Circuit again declined to address the issue of whether the Fifth Amendment privilege against self-incrimination applies to post-arrest, pr
 
 e-Miranda
 
 silence because each of the statements referencing the defendant’s post-arrest,
 
 pre-Miranda
 
 silence also included references to the defendant’s post-arrest,
 
 post-Miranda
 
 silence.
 
 Id.
 
 at 396. The Fifth Circuit found that because the comments included references to Juan Angel Pando Franco’s post-arrest,
 
 post-Miranda
 
 silence, the issue was “squarely governed by
 
 Miranda.
 
 ”
 
 Id.
 

 ¶ 21. Based on the foregoing, the complained of comments and testimony in the present case, even if improper, cannot be said to amount to plain error in light of the significant circuit split as to whether the use of a defendant’s post-arrest,
 
 pre-Miranda
 
 silence as substantive evidence of the defendant’s guilt offends the Fifth Amendment. Following the reasoning set forth by the Fifth Circuit in
 
 Salinas,
 
 we find that the references to Hurt’s post-arrest, pr
 
 e-Miranda
 
 silence do not meet all the elements of the plain-error test in that those references cannot be said to be “plain, clear or obvious” under the current law in Mississippi.
 

 ¶ 22. Ultimately, this Court does not reach the issue of whether the use of post-arrest,
 
 pre-Miranda
 
 silence as substantive evidence of a defendant’s guilt violates the Fifth Amendment privilege against self-incrimination. The United States Supreme Court has yet to address the issue, and the Fifth Circuit in
 
 Salinas
 
 and
 
 Panda Franco
 
 has also declined to address the issue. However, this Court does find the use of a defendant’s post-arrest,
 
 pre-Miranda
 
 silence in the prosecution’s case-in-chief troubling, at the very least. There is clearly potential for abuse in the practice of intentionally failing to advise an individual of his
 
 Miranda
 
 rights and then commenting at trial on his silence in an attempt to circumvent the individual’s Fifth Amendment privilege against self-incrimination. Many individuals are aware of their Fifth Amendment rights whether informed of them via
 
 Miranda
 
 warnings or not; therefore, it may be their intent to assert those rights even in instances when an officer has not instructed them as to those rights. The Nevada Supreme Court described the situation well when it stated:
 

 [T]he
 
 Miranda
 
 warnings and an arres-tee’s right to remain silent have been widely publicized via the media, so that in many cases, the silence of an unwarned arrestee will be based on his personal knowledge of his
 
 Miranda
 
 rights; therefore, the “implicit assurance” of
 
 Doyle
 
 that his silence will not be used against him is inherently present.
 

 Coleman v. State,
 
 111 Nev. 657, 895 P.2d 653, 657 (1995).
 

 ¶ 23. As the Second Circuit described the
 
 Miranda
 
 warnings in an unrelated case: “Most ten year old children who are permitted to stay up late enough to watch police shows on television can probably recite them as well as any police officer.”
 
 United States v. McCrary,
 
 643 F.2d 323, 330 (5th Cir.1981) (discussing the sufficiency of the
 
 Miranda
 
 warnings). Furthermore, while there is a split among the federal circuit courts, the majority of those courts have found that the use of a defendant’s post-arrest,
 
 pre-Miranda
 
 silence in the prosecution’s case-in-chief as evidence of substantive guilt violated the Fifth Amendment privilege against self-incrimination. While we do not find that the comments and testimony here rise to the level of plain error, this Court might have reached a different conclusion had Hurt made a contemporaneous objection to this testimony at trial.
 

 
 *1200
 
 ¶ 24. In summary, Hurt argued that the prosecutor’s comments at trial regarding his post-arrest, pr
 
 e-Miranda
 
 silence were improper. However, Hurt raised no contemporaneous objection at trial to those comments. As shown, the law surrounding the introduction of a defendant’s post-arrest, pr
 
 e-Miranda
 
 silence during the prosecution’s case-in-chief is far from “plain, clear or obvious.” There is a significant federal circuit court split regarding this issue, and the United States Supreme Court has yet to address it. The Fifth Circuit addressed the issue in
 
 Salinas
 
 and found, after reviewing the issue under a plain-error analysis, that the error could not be held to be a plain error in light of the unsettled law surrounding the issue. This Court agrees that, in the present case, the error cannot be found to meet all the elements of the plain-error test in that it cannot be said to be a “plain, clear or obvious” error under the law in Mississippi. Accordingly, this issue is without merit.
 

 ¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF FRANKLIN COUNTY OF CONVICTION OF ARMED ROBBERY AND SENTENCE AS A HABITUAL OFFENDER OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION AND TO PAY RESTITUTION OF $1,700 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FRANKLIN COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.