# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00382-COA

**DEMETRIOUS LAWAN AVERETT A/K/A**      **APPELLANT**
**DEMETRIOUS LAWON AVERETT A/K/A**
**EASTWOOD AVERETT A/K/A HEMP**
**EASTWOOD A/K/A DEMETRIOUS AVERETT**
**A/K/A DEMETRIOUS AUERETT**

**v.**

**STATE OF MISSISSIPPI**           **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/24/2014 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| COURT FROM WHICH APPEALED: | MARION COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF BURGLARY OF A BUILDING OTHER THAN A DWELLING AND SENTENCED TO SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A $5,000 FINE AND $196.60 IN RESTITUTION |
| DISPOSITION: | AFFIRMED - 09/29/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., BARNES AND JAMES, JJ.**

**BARNES, J., FOR THE COURT:**

¶1. At approximately 11:30 p.m. on July 2, 2012, Marion County Deputy Sheriff Lon

Ward was on patrol in Columbia, Mississippi, when he saw something run across Highway 13, several hundred yards in front of his patrol car. He heard an audible security alarm from the nearby Northside Package Store and noted that the glass door to the business was broken. Officer Richard Pack with the Columbia Police Department was dispatched to investigate. Surveillance video from the store revealed that two suspects, one male and one female, had thrown a cinder block through the front glass door of the store and stolen several bottles of liquor. The suspects were disguised in western-style hats and jackets. Both of the suspects fled the building, heading northwest toward Highway 13.

¶2. The following day, Officer Pack detained Shatner Lewis, a juvenile, for questioning regarding another investigation. Lewis told the officer that he saw Jennifer Henderson in the early morning hours of July 3, and that Henderson told him she and Demetrious Averett had broken into the Northside Package Store. Based on Shatner's tip, law enforcement went to Henderson's residence, but she was not home. A short time later, she was located walking down the road with a tote bag that contained a pint of Wild Turkey and was taken into custody.

¶3. In a voluntary statement, Henderson claimed Averett came to her home during the early evening hours of July 2. They, along with some of Henderson's family members, were drinking, but soon ran out of alcohol. At approximately 10 p.m., Averett and Henderson drove to his sister's home, which was located across the road from the package store. They put on sweaters and hats to disguise themselves and broke into the store and stole a few bottles of liquor. No money was taken. Henderson said Averett hid the disguises in the

2

woods and buried the liquor in a sand pit behind his sister's house. The couple then went to Lewis's home because Henderson's sister, Stephanie, who was in a relationship with Lewis's older brother, was there. Henderson told Lewis and her sister what had occurred and then left with Averett.

¶4. A search warrant was issued for the home of Averett's sister, and his sister consented to the search. Law enforcement recovered three bottles of whiskey from her backyard that were buried in sand. A straw hat and a cloth bag were also discovered on a pathway leading from the rear of the home to the liquor store. Law enforcement subsequently arrested Averett at his home.

¶5. Averett and Henderson were indicted for burglary on April 19, 2013.[1] A trial for Averett was held in Marion County Circuit Court on October 3-4, 2013. However, during the trial, one member of the jury had a family medical emergency, which precluded him from sitting on the jury for the remainder of trial. As there was an insufficient number of the jury pool (due to strikes/challenges) to select an alternate juror, the trial court declared a mistrial because of the insufficient venire.

¶6. The second trial was held on January 16, 2014. Henderson testified, reiterating that she and Averett had robbed the package store. Members of her family, who were present that evening at her home, corroborated her claim that Averett was with Henderson that evening at her mother's house. Her sister, Stephanie, also stated that Henderson came to Lewis's house about 1 a.m., and Stephanie saw Averett when she stepped outside.

---

[1] Henderson pleaded guilty in open court, but as of the time of Averett's trial, she had not been sentenced.

¶7. Averett testified on his own behalf, claiming that the State's witnesses were lying, as he was at Joshodrick Rawls's house that evening from 10 p.m. until 1 a.m. Averett said he only saw Henderson the next day at the local gas station, insinuating that Henderson was soliciting. Rawls also testified that Averett was with him that evening. Rawls did acknowledge, however, that he had been arrested during that same time period for a domestic dispute, and he was in jail approximately the same time as Averett.

¶8. After the testimony concluded, the jury found Averett guilty of burglary. He was sentenced to seven years in the custody of the Mississippi Department of Corrections, and ordered to pay $5,000 fine, a $3,500 assessment to the public-defenders fund, and $196.60 in restitution to the victim.

¶9. Averett filed a motion for a judgment notwithstanding the verdict, or in the alternative, for a new trial. In the motion, he challenged the sufficiency and weight of the evidence and summarily argued that the circuit court erred in its rulings at trial. The motion was denied, and Averett filed a timely notice of appeal. On appeal, he is represented by the Indigent Appeals Division (IAD) of the Office of State Public Defender. In addition to the IAD's brief, Averett has filed a supplemental pro se brief. *See* M.R.A.P. 28(b).

¶10. Finding no error, we affirm.

**DISCUSSION**

I. **Claim Asserted on Averett's Behalf by State Public Defender**

¶11. Averett contends that the trial court erred in failing to declare a mistrial sua sponte when (1) a State's witness impermissibly commented on Averett's failure to cooperate or

4

give a statement and (2) the prosecution commented during closing arguments regarding Averett's failure to provide officers with his alibi. Averett claims that each statement constituted a violation of his constitutional right to remain silent.

¶12. As Averett acknowledges, defense counsel made no contemporaneous objection to either statement at trial.

> When a party fails to raise a contemporaneous objection to the introduction of evidence, that party waives the right to take issue with the introduction of that evidence on appeal. *Shavers v. State,* 455 So. 2d 1299, 1302 (Miss. 1984). The rationale behind the contemporaneous objection rule is "so that the trial court may, when possible, correct the error with proper instructions to the jury." *Baker v. State,* 327 So. 2d 288, 292-93 (Miss. 1976).

*Jenkins v. State*, 75 So. 3d 49, 57 (¶21) (Miss. Ct. App. 2011). Thus, the right to bring this claim on appeal is waived, unless plain error is found. *Smith v. State*, 984 So. 2d 295, 307 (¶43) (Miss. Ct. App. 2007). "To determine if plain error has occurred, we must determine 'if the trial court has deviated from a legal rule, whether that error is plain, clear or obvious, and whether the error has prejudiced the outcome of the trial.'" *Id*. (quoting *Cox v. State,* 793 So. 2d 591, 597 (¶22) (Miss. 2001)).

### A. Officer Mike Cooper's Testimony

¶13. During the State's case-in-chief, defense counsel asked Officer Mike Cooper on cross-examination whether any physical evidence linked Averett to the crime. Officer Cooper replied: "No, sir, he wouldn't provide a statement or wouldn't give any kind of cooperation." Averett contends that Officer Cooper's "unresponsive" comment "poison[ed the] trial" and was a constitutional violation of his right to remain silent.

5

¶14.    "A defendant has the right to remain silent following arrest, and not have that silence used against him." *Carr v. State*, 655 So. 2d 824, 845 (Miss. 1995).  In *Hurt v. State*, 34 So. 3d 1191 (Miss. Ct. App. 2010), this Court considered a case similar to the present one.  At trial, the State commented in its opening argument that Danny Hurt "said absolutely nothing" to law enforcement when they picked him up for armed robbery.  *Id*. at 1194 (¶9).  Later, during the State's direct examination of the sheriff who had picked Hurt up, the officer commented that Hurt "never said a word."  *Id*. at 1195 (¶9).  Finally, in the closing arguments, the State again referred to Hurt's initial silence and his failure to disclose alibi witnesses until three hours later.  *Id*. at 1194 (¶8).

¶15.    Hurt contended on appeal that the State "improperly augmented its case with questions and comments regarding Hurt's silence after his arrest, using his silence as an implicit admission of guilt."  *Id*. at 1194 (¶9).  Hurt also claimed the evidence against him was not sufficient, relying on "unreliable testimony from an accomplice . . . [and] an untrustworthy jailhouse snitch."  *Id*.  Because Hurt failed to make a contemporaneous objection to the comments, he maintained that the issue should be reviewed under plain error.  *Id*. at 1195 (¶10).  After examining relevant federal and state caselaw regarding whether comments on a defendant's right to remain silent violate his due-process rights, we noted factual distinctions between those cases and the facts in *Hurt*.  We observed:

> Unlike the cases discussed previously, Hurt's pre-*Miranda* silence was initially brought up, not during cross-examination, but during the State's opening statement and then again during the State's direct examination of Sheriff Newman.  In such [a] situation, the Fifth Amendment is implicated because, at the time the prosecutor made the comment[,] and Sheriff Newman testified concerning Hurt's silence, *Hurt had not taken the stand*.  Neither the United

6

States Supreme Court nor our Mississippi Supreme Court has addressed the specific issue at hand, namely, whether the use of a defendant's post-arrest, pre-*Miranda* silence as substantive evidence of a defendant's guilt violates the Fifth Amendment privilege against self-incrimination.

*Id*. at 1197 (¶16) (emphasis added).[2]  Thus, while we found the prosecution's use of the defendant's post-arrest, pre-*Miranda* silence during its case-in-chief "troubling," we reasoned that any error was not "plain, clear[,] or obvious" because the federal courts are split on the issue, and the Supreme Court had "yet to address it." *Id*. at 1199-1200 (¶¶22-24) (citing *United States v. Salinas*, 480 F.3d 750, 759 (5th Cir. 2007)).

¶16.    We reaffirmed this holding in *Jenkins*, a case in which the arresting officer stated at trial that Titus Jenkins "was unwilling to speak" after being taken into custody. *Jenkins*, 75 So. 3d at 56 (¶20).  Like the case before us, Jenkins later testified on his own behalf and there was nothing in the record to indicate "that Jenkins received a *Miranda* warning when he was initially taken into custody." *Id*. at 58 (¶24).  Citing *Hurt,* we concluded that "the trial court did not commit plain error when it did not, sua sponte, prohibit the testimony at issue[.]" *Id*.

¶17.    Therefore, consistent with our precedent in *Hurt* and *Jenkins*, we likewise find the comment made by Officer Cooper during cross-examination by the defense, and prior to Averett's testimony, did not constitute plain error.

       B.     *Prosecution's Comment During Closing Argument*

¶18.    Averett testified at trial that he had an alibi – he was at Rawls's home the evening of the incident.  The State commented during its closing argument: "You heard Officer Cooper

---

[2] There is nothing in the trial record to indicate when, or if, Averett received a *Miranda* warning.

say when he picked [Averett] up, he refused to cooperate. That would have been a fine time to tell somebody something." Averett argues that the prosecution's comment "directly violat[ed]" the United States Supreme Court's holding in *Doyle v. Ohio*, 426 U.S. 610, 619 (1976), that "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment."

¶19. However, in *Fletcher v. Weir*, 455 U.S. 603, 607 (1982), the Supreme Court modified its holding in *Doyle* to allow for cross-examination in the absence of *Miranda* warnings, stating:

> In the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand. A State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant's own testimony.[3]

As here, there was no indication in the trial record for *Fletcher* whether the defendant was given *Miranda* warnings during the period in which he remained silent post-arrest.

¶20. "We recognize that the Fifth Amendment prohibits a prosecutor from commenting during closing argument regarding a defendant's exercise of his constitutional right to remain silent or not to testify." *Robinson v. State*, 42 So. 3d 598, 602 (¶11) (Miss. Ct. App. 2010). However, while the prosecutor's comment during closing arguments may have been an

---

[3] *Fletcher* was quoted by our own supreme court in *McGrone v. State*, 807 So. 2d 1232, 1233-35 (¶¶3,10-11) (Miss. 2002), which found that the State's questioning of the defendant on cross-examination as to why he did not tell law enforcement his "version of the events leading up to his arrest" was not a violation his due-process rights.

8

improper attempt to impeach Averett's alibi, we find that it was harmless error. "[A]ttorneys are granted wide latitude in making opening and closing statements[, and t]he trial court is provided considerable discretion in determining whether a particular remark is so prejudicial that a mistrial should be declared." *McCoy v. State*, 147 So. 3d 333, 344 (¶26) (Miss. 2014) (citations omitted). In cases involving improper comments by counsel, our supreme court has stated that it "will reverse only if the attorney's statement 'was so inflammatory that the trial judge should have objected on his own motion.'" *Id*. at 344-45 (¶29) (quoting *O'Connor v. State,* 120 So. 3d 390, 399 (¶23) (Miss. 2013)). Accordingly, if "the natural and probable effect" of the prosecution's improper comment creates "an unjust prejudice against the accused so as to result in a decision influenced by prejudice," then reversal is required. *Hurt*, 34 So. 3d at 1195-96 (¶12) (quoting *Jackson v. State,* 924 So. 2d 531, 542 (¶36) (Miss. Ct. App. 2005)).

¶21.     We find the State's comment failed to create unjust prejudice against Averett resulting in a decision influenced by prejudice.[4] There was ample testimony that implicated Averett in burglary. "[E]rrors may be deemed harmless where 'the same result would have been reached had they not existed.'" *Gunn v. State*, 56 So. 3d 568, 572 (¶16) (Miss. 2011). "Under some circumstances, reversal is not required, even though the prosecutor asked questions about the defendant's post-arrest silence. Such a circumstance is when the evidence weighs overwhelmingly against the defendant." *Id*. Henderson, the accomplice, testified that Averett committed the crime, and multiple eyewitnesses stated they saw

---

[4] We also note that the jury was instructed by the trial court that the "[r]emarks of counsel . . . are not evidence."

Henderson and Averett together that evening. The contraband from the burglary was found hidden in the backyard of Averett's sister. Consequently, this issue is without merit.

## II. Claims Asserted by Averett

¶22. Averett's pro se supplemental brief raises three issues in addition to the claim raised by his appellate counsel. *See* M.R.A.P. 28(b). First, he argues that the evidence was insufficient to support the verdict. "In reviewing the sufficiency of the evidence, 'the critical inquiry is whether the evidence shows beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.'" *Wallace v. State*, 160 So. 3d 1184, 1186 (¶8) (Miss. Ct. App. 2014) (quoting *Bush v. State,* 895 So. 2d 836, 843 (¶16) (Miss. 2005)).

¶23. Averett was convicted of burglary of a commercial building under Mississippi Code Annotated section 97-17-33(1) (Rev. 2006), which states:

> Every person who shall be convicted of breaking and entering, in the day or night, any shop, store, . . . in which any goods, merchandise, equipment or valuable thing shall be kept for use, sale, deposit, or transportation, with intent to steal therein, or to commit any felony, or who shall be convicted of breaking and entering in the day or night time, any building within the curtilage of a dwelling house, not joined to, immediately connected with or forming a part thereof, shall be guilty of burglary, and imprisoned in the penitentiary not more than seven (7) years.

Henderson testified that she and Averett disguised themselves, entered the package store by breaking the door's window after the store was closed, and stole liquor from the store. They then ran to his sister's home to hide evidence. Henderson and Averett subsequently went to Lewis's house to see her sister, Stephanie, and Henderson confessed the crime to Lewis and Stephanie, who corroborated her testimony.

10

¶24. Averett, however, claims that the testimony of the State's witnesses was not credible and that there was no physical evidence to connect him to the crime. However, "[t]he absence of physical evidence does not negate a conviction where there is testimonial evidence." *Hayes v. State*, 156 So. 3d 910, 913 (¶13) (Miss. Ct. App. 2014) (quoting *Graham v. State,* 812 So. 2d 1150, 1153 (¶9) (Miss. Ct. App. 2002)). Henderson testified that she committed the crime of burglary with Averett. Lewis said that Henderson admitted to him that she and Averett had robbed the package store. There was ample testimony to support Henderson's version of the events. Her family members who testified said they saw Averett with Henderson that evening. Furthermore, some of the stolen liquor bottles were found in the backyard of Averett's sister, and a straw hat was found in the woods leading to her house – physical evidence that corroborated Henderson's statement and testimony.

¶25. Although Averett denied any involvement in the burglary, "inconsistencies or contradictions in testimony are clearly in the jury's province, and we refuse to reverse on such grounds." *James v. State*, 756 So. 2d 850, 851 (¶4) (Miss. Ct. App. 2000) (citing *Evans v. State,* 460 So. 2d 824, 827 (Miss. 1984)). "It is the duty of the jurors to resolve conflicts in the testimony presented." *Id*. (citing *Groseclose v. State,* 440 So. 2d 297, 300 (Miss. 1983)). Accordingly, we find that the evidence was sufficient to support the verdict.

¶26. The second claim brought by Averett is that he was denied the right to confront adverse witnesses. *See Howell v. State*, 163 So. 3d 240, 251 (¶23) (Miss. 2014) ("[T]he admission of a testimonial statement of a witness who does not appear at trial is barred, unless that witness is unavailable, and the defendant has had a prior opportunity for cross-

11

examination." (quoting *Corbin v. State*, 74 So. 3d 333, 338 (¶13) (Miss. 2011))). Specifically, Averett refers to a police report filled out by Officer Herbert Crocroft, in which he recounted an interview with Lloyd Rivett, one of the package-store owners. Neither person testified at trial. Averett's argument is that because the State brought the burglary charge based on this report, it was testimonial in nature. However, this report was never entered into evidence at trial. Therefore, there is no merit to this issue.

¶27. Averett's final argument is that the trial court erred in allowing the State to comment on prior bad acts, because the questions and comments were irrelevant and prejudicial. Averett testified on cross-examination that he barely knew Henderson, stating she was "not in [his] circle." The State then asked Averett whether he had been "questioned [by law enforcement] about a situation there at the hotel in Columbia involving Ms. Henderson" in January 2011. Averett said he knew "nothing about that," although he admitted being arrested for indecent exposure. Defense counsel objected to the line of questioning, claiming it was prejudicial. The trial court ruled that while it might have been prejudicial, Averett had "opened the door" to the line of questioning by claiming that he did not know Henderson very well.

¶28. "Where an accused, *on direct examination*, seeks to exculpate himself, such testimony is subject to normal impeachment via cross-examination, and this is so though it would bring out that the accused may have committed another crime." *Stewart v. State*, 596 So. 2d 851, 853 (Miss. 1992) (emphasis added). Thus, "[e]vidence, which is otherwise inadmissible, may be properly presented where the defendant has 'opened the door.'" *Field v. State*, 28

12

So. 3d 697, 704 (¶21) (Miss. Ct. App. 2010) (citing *Gunnell v. State,* 750 So. 2d 1284, 1286 (¶12) (Miss. Ct. App. 1999)). Although we acknowledge that the majority of Averett's testimony regarding his lack of familiarity with Henderson occurred during cross-examination, he did testify during direct examination that he only knew her from the local gas station.

> Q. Did you come into contact with Jennifer Henderson?
>
> A. Yeah, at a store called Amoco. It is in our community. That's where she usually be at, pretty much every day. Her, her cousins and sister, stuff like that. They kind of, like, be – and I want to be careful what I say, but like panhandling or just trying to solicit. I'm single, but I have a girlfriend. So that's pretty much how I know her, from seeing her at the store trying to talk to different guys and stuff.
>
> . . . .
>
> Q. Anything else you would like to add?
>
> A. That I'm innocent. You know what I'm saying. That as far as how I know them would be like, women is at th[ose] stores soliciting. That's it . . . .

¶29. We agree that Averett "opened the door" during direct examination and find no error in trial court's ruling to allow the State's questions. Furthermore, the State did not ask the questions to establish evidence of prior bad acts; it was merely trying to demonstrate that Averett had been caught at a hotel room with Henderson and, therefore, knew her more intimately than he claimed. Accordingly, we find no merit to this issue raised by Averett.

¶30. **THE JUDGMENT OF THE CIRCUIT COURT OF MARION COUNTY OF CONVICTION OF BURGLARY OF A BUILDING OTHER THAN A DWELLING AND SENTENCE OF SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A $5,000 FINE AND $196.60 IN RESTITUTION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED**

**TO MARION COUNTY.**

      **LEE, C.J., GRIFFIS, P.J., ISHEE, CARLTON, MAXWELL, FAIR, JAMES AND WILSON, JJ., CONCUR. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**