United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 5, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-10964

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARIO ALFREDO SALINAS,

Defendant-Appellant.

_____

On Appeal from the United States District Court for the
Northern District of Texas, Dallas Division,
No. 3:04-CR-208-N

_____

Before GARWOOD, DENNIS, AND OWEN, Circuit Judges.

DENNIS, Circuit Judge.

This case is before us on appeal of defendant Mario Alfredo Salinas's conviction for unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). For the reasons stated below, we AFFIRM Salinas's conviction.

1

## I.  Background and Proceedings Below

At approximately 11:15 p.m. on April 9, 2003, defendant Mario Alfredo Salinas was driving a black, 1999 GMC Yukon.  Officer Erwin Fulcher of the Carrollton, Texas police department stopped the vehicle because it had a defective tail light.  Officer Fulcher asked Salinas for his license and proof of insurance.  Salinas gave the officer his driver's license, but stated that he did not have proof of insurance because he was in the process of purchasing the vehicle.  Officer Fulcher eventually arrested Salinas for failure to provide proof of insurance and transported Salinas to the Carrollton police station.

After Salinas was arrested, additional Carrollton police officers on the scene conducted an inventory search of the Yukon.  During the search, officers found a brown paper bag, which contained $3,397 in cash, between the driver's seat and the center console. Beneath the bag, officers found a loaded Ruger 9mm semiautomatic pistol.  Officers also found a black pouch containing a loaded Rossi .357 Magnum revolver under the

front passenger seat. The Yukon's rear cargo area contained a gym bag with $168 and some vitamins inside it. At the police station, officers found $2,168 in cash in Salinas's jacket pocket.

Two days after his arrest, Salinas returned to the Carrollton police station and said that he wished to pick up his "money and other stuff." The property room officer stated that all of the seized property was evidence and could not be released to Salinas. The officer also stated that, because Salinas was a convicted felon, the firearms could not be returned to him. Salinas responded, "I know that," and he then left.

Salinas ultimately was charged with one count of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). At trial, Salinas's defense was that he had borrowed the Yukon from his friend Rosendo Moreno, and that he did not know that the firearms were in the car. Moreno testified at trial that he purchased the Yukon on April 8, 2003 from a man named Henry Lopez. Moreno stated that, on April 9, 2003, he took the vehicle to Big Rig Detailers,

an automotive shop at which Salinas worked, to have some hail damage repaired and to have the car painted. While he was there, Moreno stated, Salinas told Moreno that his car was in the shop, and he asked Moreno whether he could borrow the Yukon. To support Moreno's testimony, the defense offered into evidence a bill of sale showing a sale from Lopez to Moreno on April 8, 2003. The bill of sale indicated that it had been notarized by Jose Francisco May.

Moreno also testified that the cash and the two firearms found in the Yukon belonged to him. He stated that he purchased the .357 Magnum in a "street buy," and that he purchased the 9mm from a friend named Carlos Hernandez. Moreno testified that the guns were in the Yukon because he had used them at a gun range earlier on April 9, 2003, before he loaned the vehicle to Salinas, and that he kept the firearms loaded because he had previously been the victim of an attempted carjacking.

On cross-examination, Moreno admitted that he did not have a permit for either weapon, that the firearms were not registered to him, and that he did not have any

4

documentation to prove that he owned the firearms.  The prosecution also cross-examined Moreno at some length about other aspects of his version of events, including the fact that, although he claimed that the $3,397 found in the Yukon belonged to him, he had never made any attempt to recover the money from the Carrollton police department.

The defense also presented testimony from Carlos Hernandez, who testified that he sold Moreno the 9mm in March 2003, and from Salinas's employer, Christopher Cruz, who stated that he recalled that Moreno brought a sport utility vehicle to Big Rig Detailers in April 2003 and that Salinas had borrowed the vehicle.  Salinas did not testify in his own defense at the trial.

In rebuttal, the prosecution presented testimony from Henry Lopez, the registered owner of the Yukon.  Lopez testified that he did not sell the Yukon to Moreno on April 8, 2003.  Lopez stated that he sold the Yukon to a friend named Shane Clendening on April 1, 2002, and that he believed that the vehicle had since been resold several times, but that the title had never been

5

transferred out of his name.  Lopez also stated that, although he signed a bill of sale that purported to describe a sale to Rosendo Moreno on April 8, 2003, he actually signed the document on April 16, 2003, and he did so only because he believed that it would help to get the title transferred out of his name.  Lopez testified that there was not a notary public present when he signed the bill of sale.  The government also called Jose Francisco May, the notary public, who testified that he did not notarize the bill of sale between Lopez and Moreno.

On January 20, 2005, a jury convicted Salinas, and on July 11, 2005, the district court sentenced him to 57 months in prison.  On appeal, Salinas makes two arguments.  First, he argues that the prosecution improperly attempted to use his post-arrest silence as substantive evidence of his guilt.  Second, Salinas claims that the evidence at trial was insufficient to support his conviction.

## II. The Prosecution's References to Salinas's Post-Arrest Silence

Salinas claims that the prosecution improperly made reference to his post-arrest silence at three points during its case-in-chief. First, during the prosecution's opening argument, the prosecutor stated, "At no time, at no time, the evidence is going to show, that the defendant denied ownership of the money or guns." Defense counsel immediately objected to that remark. The court sustained the objection and reminded the jury that it was to render its verdict only on the basis of the evidence presented, not on the arguments of counsel.

Second, during the government's examination of Officer Fulcher, who arrested Salinas and who was with Salinas at the Carrollton police station when the firearms were discovered in the Yukon, the prosecutor asked Officer Fulcher "how, if at all" Salinas reacted when he heard that firearms had been found in the Yukon. Defense counsel objected before the witness could answer, and the court sustained the objection.

Third, later in its direct examination of Officer Fulcher, the prosecution asked Officer Fulcher whether Salinas made any statements after his arrest. Officer Fulcher answered, "No, sir." Defense counsel again objected, and the court sustained the objection. Defense counsel also requested that the jury be instructed to disregard the statement. The trial judge stated that he would not then instruct the jury, but would consider an instruction at a later time. Defense counsel apparently never reiterated his request for an instruction. In its charge to the jury, however, the court instructed the jury that the statements and arguments of the lawyers could not be considered as evidence and that the jury was to disregard any question to which the court had sustained an objection.

Salinas asserts that each of those statements was an improper comment on his post-arrest silence, in violation of his constitutional rights. The government maintains that the comments and questions were permissible. The government points out that Salinas did not receive the

<u>Miranda</u>[1] warnings at the time of his arrest,[2] and it argues that the prosecution can permissibly refer to a defendant's pre-<u>Miranda</u> warning silence at trial.

Because Salinas did not properly preserve his claim of error regarding the prosecutor's comments on his post-arrest silence in the district court, we review this claim only for plain error. Although Salinas's counsel timely objected to each of the prosecutor's references to Salinas's post-arrest silence, the trial court sustained all of those objections, and the trial court's instructions to the jury made it clear that the jury was not to consider any of the challenged remarks.[3] Salinas's counsel never took exception to the district court's

---

[1]<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

[2]Officer Fulcher testified at trial that he did not read Salinas the <u>Miranda</u> warnings because he had no intention of interrogating Salinas.

[3]With respect to the comment made during the prosecutor's opening statement, the district court, at Salinas's request, instructed the jury that the lawyers' comments were not evidence. While the trial court declined to immediately instruct the jury to disregard the final improper remark—the court stated that it was "not going to instruct at this time," but would "consider that later"—the district court did later charge the jury that it was to disregard any question to which the court sustained an objection. In addition, nothing in the record indicates that Salinas again raised the issue with the district court or objected to its handling of the situation.

handling of his objections, and, significantly, Salinas never requested that the district court declare a mistrial. Thus, Salinas effectively received all of the relief that he requested from the district court. When a defendant asks this court to reverse a conviction under these circumstances, the defendant essentially asks us "'to go against the implicit judgment of both the trial court and the defendant's trial counsel that the trial court's corrective action was adequate and appropriate.'" United States v. Carter, 953 F.2d 1449, 1465-66 (5th Cir. 1992) (quoting United States v. Canales, 744 F.2d 413, 431 (5th Cir. 1984)). In such cases, we consider the challenged comments under the plain error standard. See id. at 1466 (applying plain error standard where trial court sustained defendant's objections and defendant did not request mistrial; stating that "logically there is little difference between a case that comes to us where no objection has been made to the alleged impropriety and one where no further objection has been made to the trial judge's handling of an impropriety"); see also Canales, 744 F.2d at 431.

To establish plain error, the defendant must show that "(1) there is an error, (2) the error is clear or obvious, and (3) the error affects his substantial rights." United States v. Coil, 442 F.3d 912, 916 (5th Cir. 2006); Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). An error is considered plain, or obvious, only if the error is clear under existing law. United States v. Olano, 507 U.S. 725, 734 (1993) (stating that a "court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law"). If those three conditions are satisfied, this court may grant relief if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Ibarra-Zelaya, 465 F.3d 596, 606 (5th Cir. 2006) (citing United States v. Mares, 402 F.3d 511, 520 (5th Cir. 2005)); United States v. Garcia-Flores, 246 F.3d 451, 457 (5th Cir. 2001) ("'Plain error occurs when the error is so obvious and substantial that failure to notice and correct it would affect the fairness,

integrity, or public reputation of judicial proceedings and would result in manifest injustice.'") (quoting United States v. Mizell, 88 F.3d 288, 297 (5th Cir. 1996)).

A prosecutor's invocation of the defendant's exercise of the right to remain silent can potentially implicate two, distinct constitutional rights—due process, and the Fifth Amendment privilege against self-incrimination. We consider each in turn.

### A.  Due Process

In a series of cases, the Supreme Court has established that due process prevents the prosecution from commenting at trial on a criminal defendant's silence in response to the Miranda warnings, but that due process does not prohibit the prosecution from impeaching a defendant's trial testimony by referring to the defendant's pre-arrest, or post-arrest, but pre-Miranda, silence.

In Doyle v. Ohio, 426 U.S. 610 (1976), the Supreme Court held that the Due Process Clause ordinarily prohibits the use of a defendant's post-Miranda silence

12

to impeach his trial testimony.[4]  The enduring rationale of <u>Doyle</u> is that, because the <u>Miranda</u> warnings carry with them an implicit assurance by the government that it will not use the defendant's exercise of the right to remain silent against him, "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial."  <u>Doyle</u>, 426 U.S. at 618.[5] Consistent with <u>Doyle</u>'s emphasis on fairness, the Supreme Court held in two later cases that it does not violate due process for the prosecution to impeach a defendant's testimony by reference to the defendant's pre-arrest, or post-arrest, but pre-<u>Miranda</u>, silence.  See <u>Fletcher v.</u>

---

[4]Due process also generally prohibits the use of a defendant's post-<u>Miranda</u> silence as substantive evidence of guilt.  See <u>United States v. Moreno</u>, 185 F.3d 465, 473 (5th Cir. 1999).  The general rule of <u>Doyle</u> is not absolute, however.  For example, the prosecution can use a defendant's post-<u>Miranda</u> silence to rebut testimony by the defendant that he cooperated with the police at the time of his arrest.  See <u>United States v. Rodriquez</u>, 260 F.3d 416, 421 (5th Cir. 2001).

[5]The <u>Doyle</u> court also noted that such silence is not necessarily probative because it is "insolubly ambiguous."  <u>Doyle</u>, 426 U.S. at 617.  But subsequent decisions have made clear that the "fundamental fairness" rationale was the key feature of <u>Doyle</u>. <u>E.g.</u>, <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 628 (1993) (noting that <u>Doyle</u> rests on fundamental fairness and finding that pre-<u>Miranda</u> silence "is probative"); <u>see also</u> <u>Rodriquez</u>, 260 F.3d at 421 n.1 (stating that <u>Doyle</u>'s "'insolubly ambiguous' rationale has since been discarded").

Weir, 455 U.S. 603, 604-07 (1982) (post-arrest, pre-Miranda silence); Jenkins v. Anderson, 447 U.S. 231, 239-40 (1980) (pre-arrest silence). In Jenkins, the Court explained that "the fundamental unfairness present in Doyle" does not exist with respect to the use of pre-arrest silence on cross-examination because "no governmental action induce[s] [a defendant] to remain silent before arrest." 447 U.S. at 240. The Fletcher court subsequently rejected the argument that the fact of arrest was sufficient to trigger Doyle's fundamental fairness concern: "In the absence of the sort of affirmative assurances embodied in the Miranda warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand." 455 U.S. at 607; see also United States v. Musquiz, 45 F.3d 927, 930-31 (5th Cir. 1995) (permitting use of pre-Miranda silence to cross-examine defendant).

Although Fletcher clearly permits the use of a defendant's pre-Miranda silence to impeach the defendant's trial testimony, the Supreme Court has not

14

specifically decided whether the prosecution violates _Doyle_ by commenting on the defendant's pre-_Miranda_ silence when the defendant does not testify in his own defense.  Given _Fletcher_'s emphasis on the affirmative assurances of the _Miranda_ warnings, however, it is clear that, irrespective of whether the defendant testifies at trial, the rationale of _Doyle_ applies only to post-_Miranda_ silence.  See _Wainwright v. Greenfield_, 474 U.S. 284, 291 n.6 (1986) (noting that "fundamental unfairness" referred to in _Doyle_ and its progeny "derives from the implicit assurances of the _Miranda_ warnings"); _Combs v. Coyle_, 205 F.3d 269, 280 (6th Cir. 2000) ("[T]he _Doyle_ line of cases clearly rests on the theory that _Miranda_ warnings themselves carry an implicit assurance that silence will not be penalized; actual receipt of the warnings is key.  Therefore, the comment on Combs's pre-_Miranda_ silence did not violate due process.").  Accordingly, because Salinas was not read the _Miranda_ warnings after he was arrested in this case, the prosecutor's comments did not violate _Doyle_.

B.  The Privilege Against Self-Incrimination

Salinas also argues that the prosecution's references to his post-arrest silence violated the Fifth Amendment privilege against self-incrimination.[6]  No published decision of this court has addressed whether the prosecution can, at trial, introduce substantive evidence that the defendant remained silent after he was arrested and taken into custody, but before he was given the Miranda warnings.  This court has previously held that a prosecutor's reference to a non-testifying defendant's pre-arrest silence does not violate the privilege against self-incrimination if the defendant's silence is not induced by, or a response to, the actions of a government agent.  See United States v. Zanabria, 74 F.3d 590, 593 (5th Cir. 1996).[7]  Moreover, one unpublished decision of

_____

[6]Although the Doyle line of cases focused primarily on due process, in each of those cases, the prosecution used the defendant's silence only to impeach the defendant's trial testimony, so the privilege against self-incrimination was inapplicable.  See Jenkins, 447 U.S. at 237-38 (rejecting argument that use of pre-arrest silence for impeachment violated privilege against self-incrimination because "impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial").  As noted above, Salinas did not testify at trial.

[7]We do not read Zanabria as categorically holding that the prosecution's use of a defendant's pre-arrest silence as substantive evidence can never violate a defendant's constitutional

16

this court has interpreted <u>Zanabria</u> to permit the substantive use of post-arrest, pre-<u>Miranda</u> silence. <u>See</u> <u>United States v. Garcia-Gil</u>, 133 F. App'x 102, 108 (5th Cir. May 27, 2005) (stating that <u>Zanabria</u> "prevents Garcia-Gil from drawing a distinction based on whether the silence was used as impeachment evidence or as substantive evidence of guilt").[8]

In addition, there is a split among the other federal circuits as to whether a prosecutor's use of a defendant's post-arrest, pre-<u>Miranda</u> silence as

---

rights. Indeed, the <u>Zanabria</u> court assumed, without deciding, that pre-arrest silence could be protected by the Fifth Amendment:

> Assuming without deciding that Zanabria's pre-arrest silence falls within the reach of "testimonial communications" protected by the fifth amendment, the record makes manifest that the silence at issue was neither induced by nor a response to any action by a government agent. The fifth amendment protects against compelled self-incrimination but does not, as Zanabria suggests, preclude the proper evidentiary use and prosecutorial comment about <u>every</u> communication or <u>lack</u> thereof by the defendant which may give rise to an incriminating inference. We find no error in the use of this evidence or in the prosecutor's comments thereon.

74 F.3d at 592.

[8]Although we do not today decide this constitutional issue, we expressly decline to endorse the reasoning of the non-precedential opinion in <u>Garcia-Gil</u>, which appears to have reached a broad holding on the use of post-arrest silence by simply extrapolating from <u>Zanabria</u>'s narrow holding on the use of pre-arrest silence on specific facts.

substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination. The Seventh, Ninth, and D.C. Circuits have all squarely held that it does. See United States v. Velarde-Gomez, 269 F.3d 1023, 1028-30 (9th Cir. 2001) (en banc); United States v. Whitehead, 200 F.3d 634, 637-39 (9th Cir. 2000); United States v. Moore, 104 F.3d 377, 384-90 (D.C. Cir. 1997); United States v. Hernandez, 948 F.2d 316, 322-23 (7th Cir. 1991).[9] The First and Sixth Circuits have gone further and have held that the substantive use of even pre-arrest silence can violate the privilege against self-incrimination. See Combs, 205 F.3d at 280-83; Coppola v. Powell, 878 F.2d 1562, 1567-68 (1st Cir. 1989). The Fourth, Eighth, and Eleventh Circuits have, on the other hand, found the substantive use of post-arrest, pre-Miranda silence during the prosecution's case-in-chief permissible. See United States v. Frazier, 408 F.3d 1102, 1109-11 (8th Cir. 2005); United States v.

---

[9]The Second Circuit has assumed, without deciding, that such use of a defendant's pre-Miranda silence is impermissible. See United States v. Caro, 637 F.2d 869, 876 (2d Cir. 1981).

18

Rivera, 944 F.2d 1563, 1567-68 (11th Cir. 1991); United States v. Love, 767 F.2d 1052, 1063 (4th Cir. 1985).

We need not decide this constitutional question today. Because this circuit's law remains unsettled and the other federal circuits have reached divergent conclusions on this issue, even assuming that the prosecutor's comments were improper, Salinas cannot satisfy the second prong of the plain error test—that the error be clear under existing law. See United States v. Bennett, 469 F.3d 46, 50 (1st Cir. 2006) ("In light of conflicting case law, any error that might have been committed by the district court was not 'obvious,' and therefore not plain error."); United States v. Thompson, 82 F.3d 849, 856 (9th Cir. 1996) ("Because of the circuit split, the lack of controlling authority, and the fact that there is at least some room for doubt about the outcome of this issue, we cannot brand the court's failure to exclude the evidence 'plain error.'") (internal footnote omitted). Accordingly, Salinas cannot establish plain error, and he is therefore not entitled to relief on this claim.

## III. Sufficiency of the Evidence

Salinas's remaining argument is that the evidence at trial was insufficient to establish that he knowingly possessed the firearms that were found in the Yukon. Where, as in this case, the defendant moves for a judgment of acquittal at the close of the government's case, but fails to renew the motion at the close of all evidence, the court applies a stricter standard to a sufficiency of the evidence challenge. United States v. Green, 293 F.3d 886, 895 (5th Cir. 2002); United States v. Ruiz, 860 F.2d 615, 617 (5th Cir. 1988). In such cases, the court reviews the evidence only to determine whether there has been a manifest miscarriage of justice, which occurs only when the record is devoid of evidence of guilt. Green, 293 F.3d at 895; Ruiz, 860 F.2d at 617.

To convict Salinas, the government had to prove (1) that Salinas had a prior felony conviction; (2) that he possessed a firearm; and (3) that the firearm traveled in or affected interstate commerce. See United States v. Guidry, 406 F.3d 314, 318 (5th Cir. 2005). The court correctly charged the jury that possession could be

actual or constructive. Constructive possession can be established by showing (1) ownership, dominion or control over an item; or (2) dominion or control over the place where the item is found. See United States v. De Leon, 170 F.3d 494, 496 (5th Cir. 1999). Possession may be proved by circumstantial evidence. Id. Where there is joint occupancy or control, however, the government must, in addition to showing control over the place where the item was found, present evidence to support at least a plausible inference that the defendant knew of the item itself. See id. at 497.

Salinas argues that the record is devoid of evidence that he knew that the firearms were in the Yukon. As the government asserts, however, there was evidence in the record to support an inference that Salinas possessed the firearms and knew that they were in the Yukon. Contrary to his defense at trial, Salinas initially claimed that he was in the process of purchasing the Yukon, and one of the firearms was found within reach of the driver's seat, where Salinas was sitting. Moreover, two days after his arrest, Salinas attempted to claim property—specifically,

his "money and other stuff"[10]—from the Yukon at the police station's property room. This evidence together was easily sufficient for a jury to conclude that the government satisfied its burden of proof. In addition, the prosecution introduced substantial evidence to rebut Salinas's proffered defense at trial. Accordingly, we find that there was sufficient evidence to support Salinas's conviction.

## CONCLUSION

For the reasons stated above, we AFFIRM Salinas's conviction.

AFFIRMED.

---

[10]In this regard, it is significant that one of the weapons was found between the driver's seat and the center console, underneath a paper bag containing $3,397 in cash.

22