# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 12, 2010

No. 09-40967

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

BOBBY CASWELL PITTMAN,

Defendant-Appellant.

Appeal from the United States United States District Court
for the Southern District of Texas
USDC No. 2:09-CR-375-ALL

Before DeMOSS, BENAVIDES, and ELROD, Circuit Judges.

PER CURIAM:[*]

This case, in which Defendant-Appellant Bobby Caswell Pittman appeals his conviction after a jury trial on two counts of smuggling aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) & (1)(B)(ii), involves a determination of plain error where the government, contrary to established law, engaged in improper cross-examination and improper rebuttal closing argument. Because we find that the evidence of Defendant-Appellant's guilt is overwhelming, we find that

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-40967

Defendant-Appellant's rights were not substantially affected by the prosecutor's errors, and accordingly we affirm the judgment of the district court.

On or about April 22, 2009, around 10:00 p.m. Defendant-Appellant Bobby Caswell Pittman was stopped at the primary inspection lane of the United States Border Patrol checkpoint in Falfurrias, Texas, and Border Patrol agents found five illegal aliens inside the otherwise empty trailer of his truck. Agent Eduardo E. Ybarra then arrested Pittman and found approximately $4,103 in cash folded in his front shirt pocket. Pittman waived his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and signed a form stating that he understood his rights and agreed to discuss what happened, though he refused to make a written statement. According to the trial testimony of Agent Ybarra, Agent Romualdo Barrera, and Agent Rodolfo Hernandez, Pittman confessed to agreeing to transport five aliens to Victoria, Texas, at a rate of $700 per person. Pittman, in his alleged confession, explained that a man approached him at the Academy Sports ("Academy") store truck lot and offered him payment in return for his transporting five illegal aliens. Pittman accepted the offer and allowed the aliens to enter the trailer. Pittman then secured the trailer doors and placed a seal on them.

Two of the five undocumented aliens found in the trailer testified at trial that smugglers had delivered them to the Academy store and loaded them into the trailer. They also stated that they had not understood the post-arrest statements that they signed and that the Border Patrol agents had enticed them to sign the statements regardless. Donald Walker, a loss prevention manager from Academy's corporate office, also testified at trial and explained that Academy employees, not the truck drivers, load the returns and place the seal on the trailer doors, as the truck drivers are not supposed to have any seals, and moreover, Academy employees never place seals on empty trailers.

No. 09-40967

Pittman testified in his own defense and denied having agreed to transport the aliens and denied having confessed as much to the Border Patrol agents. Pittman instead testified that when the smuggler approached him, requesting that he transport aliens, he refused and entered the Academy store to escape the smuggler. Upon Pittman's return, the smuggler reiterated his offer, which Pittman again rejected. Pittman then spot-checked the trailer, retrieved an extra seal that he knew was inside the trailer, shut the trailer doors, and put the seal on the trailer to prevent the smuggler from tampering with the trailer. Pittman explained that he carried $4,103 because he had planned to buy a car in Wharton, Texas, that morning, but had later discovered that the car was already sold.

On cross-examination the prosecutor asked Pittman if the agents had lied about each of the facts to which they testified that contradicted Pittman's testimony and asked Pittman a total of five times whether the agents were lying. Pittman refused to say that the agents were lying, and instead explained that the agents "got some things mixed up" perhaps because the checkpoint was busy that night. During rebuttal closing argument, the prosecutor stated:

> [T]he defense here is that everybody's lying. Everybody in the world is in a grand conspiracy and they're all liars, except Mr. Pittman. He's the one truthful person. All the law enforcement officers, even that material witness, even people from Mexico, everybody's lying. Liars, liars, liars. Me, I'm the honest person. Now I'm the honest person. It's a grand conspiracy.

The prosecutor then posited:

> Why should you believe the officers are lying? I don't know. Why would they lie? Risk their careers, commit perjury, for what? A big bonus? A raise? No. They're just doing their job. They don't get anything out of it. What reward do they get for helping us out? They get to come in here and be called liars. Isn't that a great deal?

The jury found Pittman guilty on both counts, and the district court sentenced him to a 48-month prison term. Pittman timely filed a notice of

3

appeal.   Pittman contends that during cross-examination the prosecutor improperly questioned him about whether government witnesses lied in their testimony, and that during rebuttal closing argument the prosecutor improperly bolstered government witnesses' testimony and improperly asked the jury to enforce the law to protect community values, and that these missteps together resulted in an unfair trial that warrants reversal of his conviction and remand for a new trial.

Because Pittman did not object to the prosecutor's remarks at trial, this court reviews for plain error.   Under our plain error standard Pittman can prevail only if he can show that the prosecutor's remarks amounted to (1) an error, (2) that was clear or obvious, and (3) that affected Pittman's substantial rights.   *See United States v. Olano*, 507 U.S. 725, 732-37 (1993).   "The determinative question in our inquiry is 'whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict.'"   *United States v. Thompson*, 482 F.3d 781, 785 (5th Cir. 2007) (quoting *United States v. Virgen-Moreno*, 265 F.3d 276, 290 (5th Cir. 2001)).   "In answering this question, we consider '(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction.'" *Id.* (quoting *United States v. Guidry*, 456 F.3d 493, 505 (5th Cir. 2006) (internal citation omitted)).   Even if a defendant-appellant shows substantial error, "we still would have discretion to decide whether to reverse, which we generally will not do unless the plain error seriously affected the fairness, integrity, or public reputation of the judicial proceeding."   *United States v. Gracia*, 522 F.3d 597, 600 (5th Cir. 2008).

This court has repeatedly held that a prosecutor's questioning a defendant-appellant about the veracity of the government's witnesses is "inappropriate," *United States v. Williams*, 343 F.3d 423, 437-38 (5th Cir. 2003), and the government concedes that the prosecutor's questioning of Pittman during

cross-examination regarding whether Border Patrol agents were lying constituted clear or obvious error. Appellee Br. at 20.

This court has also often found that telling jurors that in order for them to believe a witness they would have to believe in a government conspiracy is error that is clear and obvious. *See Gracia*, 522 F.3d at 601-02 (deeming clear and obvious error a prosecutor's opining that in order to believe the defendant, the jury would necessarily have to believe in a government conspiracy); *United States v. Herrera*, 531 F.2d 788, 790 (5th Cir. 1976) (finding objectionable prosecutor's statement that to believe the defendant's theory the jury had to find that the government's witnesses and the prosecutor conspired with each other). Additionally, we have condemned a prosecutor's reliance on the authority of the federal government to bolster a government witness in closing argument and have found that it is plain error. *See Gracia*, 522 F.3d at 601 ("A prosecutor may argue fair inferences from the evidence that a witness has no motive to lie, but cannot express a personal opinion on the credibility of witnesses."); *United States v. Gallardo-Trapero*, 185 F.3d 307, 320 (5th Cir. 1999) (holding it is "pernicious" for a prosecutor to rely on the authority of the federal government to "'impart an implicit stamp of believability to what the prosecutor says'") (quoting *United States v. Goff*, 847 F.2d 149, 163 (5th Cir. 1988)). It is clear that both of these improprieties occurred in this case.[1] The prosecutor improperly bolstered the Border Patrol agents' credibility and relied on facts outside of the record when he argued that the defense theory required the jury to find "a grand conspiracy"

---

[1] Pittman also argues that the prosecutor's statement that "[a]lien smuggling laws are no good if we don't have people like you to enforce it," and exhorting the jury to "do the right thing," improperly requested that the jury enforce the law to protect community values, rather than decide the facts. In this circuit, however, "[i]t is well-settled that, unless the prosecutor intended to inflame, 'an appeal to the jury to act as the conscience of the community is not impermissible.'" *United States v. Ruiz*, 987 F.2d 243, 249 (5th Cir. 1993) (citation omitted). As there is no indication that the comments were designed to inflame the jury, we do not find the prosecutor's statements regarding the role of the jury to be clear or obvious error.

and that the Border Patrol agents should be believed because they "were just doing their job" and had no reason to lie.

We are unconvinced by the government's argument that the prosecutor's comments were proper because they drew reasonable inferences from the testimony and properly responded to defense counsel's closing argument "theme" that the agents were lying. First, there was no evidence to support the prosecutor's assertion that the government's witnesses were "just doing their job," his suggestion that they had no reason to risk their careers and lie, or his remark that the only way that the jury could believe Pittman was to find that there was a governmental conspiracy against him. Next, a prosecutor is permitted to present arguments in response to the defense's closing and may even bolster the credibility of witnesses, but only if done specifically to rebut assertions by defense counsel. *See United States v. Thomas*, 12 F.3d 1350, 1367 (5th Cir. 1994). The prosecutor's response must be weighed against defense counsel's statement and must be of appropriate scale. *See United States v. Ramirez-Velasquez*, 322 F.3d 868, 874-75; *United States v. Taylor*, 210 F.3d 311, 318-19 (5th Cir. 2000) (finding that even though defense counsel suggested that government witnesses committed perjury, the prosecutor erred by arguing beyond mere rebuttal of that argument). Defense counsel took great care in his closing argument to say that "Mr. Pittman does not want to call the agents liars," and instead asked the jurors to conclude that the agents made "a huge mistake," though soon afterward, according to the transcript, he said that the agents were "lying." Given defense counsel's care in his closing argument in explaining that officials were mistaken, not lying, a single later mention that the officials lied on the report was not sufficiently egregious to permit the prosecutor to respond by going outside of the evidence to bolster the agents' credibility by explaining that they were "just doing their job," insinuating that they had no reason to risk their careers and lie, and that to believe Pittman the jury would

have to believe there was a conspiracy.  At most, defense counsel made a single reference to the agents lying; it was not the theme of the closing, which focused on asking the jury to believe Pittman's story.  As such, the prosecutor went too far in rebutting defense counsel's closing argument.  The statements that the prosecutor made during closing argument bolstering the credibility of government witnesses amounted to clear error.

Ameliorating the government's improper argument and cross-examination and their resultant prejudice is the fact that the district court instructed the jury that the lawyers' questions and arguments were not evidence, and told the jury that it was the jury's responsibility to determine the credibility of witnesses.  Juries are presumed to follow the court's instructions, and there was no indication here that this jury did not.  *See Gracia*, 522 F.3d at 604 (explaining that generalized jury instructions served, "if only moderately, to reduce the degree of prejudice" resulting from the prosecutor's improper remarks).

Were this a close case, the jury instruction itself would not be sufficient to reverse the prejudicial effect of the prosecutorial misconduct. However, the jury instruction, combined most importantly with the overwhelming evidence against Pittman, convinces us that the error did not affect Pittman's substantial rights. Where there are "numerous witnesses, pieces of evidence, and issues placed before the jury," this court has declined to "say that the prosecutor's statements overshadowed what had come before and unduly prejudiced the Appellants' case." *Gallardo-Trapero*, 185 F.3d at 320-321. Where the government's evidence of the defendant's guilt is strong, a prosecutor's improper remarks regarding witness credibility do not amount to a substantial violation of the defendant's right to a fair trial.  *See United States v. Fields*, 483 F.3d 313, 360 (5th Cir. 2007).

No. 09-40967

In this case, even without the contested issue of Pittman's confession, there was substantial and compelling evidence of Pittman's guilt. First, there was no dispute that Pittman transported the five illegal immigrants in his truck. Next, the Border Patrol agents seized $4,103 in cash from Pittman's pocket, and the smuggling of the five aliens would have earned him $3,500, thus he had an unusually large amount of cash that corresponded with a sum he would have earned by smuggling the aliens. Pittman admitted that he put a seal on a trailer that did not contain any merchandise from Academy, which violated Academy's policy that only Academy employees put seals on trailers and only if the trailers contain merchandise. Additionally, statements in Pittman's own testimony were inconsistent with his not knowing there were people in his trailer. Pittman testified that he "spot checked the trailer" and did not notice anyone inside, explaining, he "didn't get inside the trailer with a flashlight on, because it was getting dark," yet he had obviously contemplated the possibility that the smuggler would put the aliens in the trailer without his permission as he testified that he put the seal on the trailer so that he would be able to "see if somebody tamper[ed] with that truck" and "know, you know, hey, somebody's in the truck." R. at 295. Moreover, though it was night, Pittman testified that a portion of the trailer was lit because the nearby loading dock had lights. After the smuggler asked Pittman to transport the aliens, Pittman purportedly went shopping for bike parts for his daughter, though he had already been waiting at the Academy store for nearly two hours. Additionally, the smuggler's behavior of putting the aliens into the trailer without Pittman's knowledge would have been irrational as the smuggler would likely have no way of getting paid (one alien testified he had not paid the smuggler for his services at all and the other had made only partial payment) as he did not know where Pittman was headed with the trailer. More problematically, the trailer did not open from the

8

inside, and thus the aliens would have no way of getting out of the trailer once the trailer arrived at Pittman's final destination.

In light of this evidence, this case does not present a situation like that in *Gracia* where, "absent the jury's crediting of the agents' testimony, [the defendant-appellant] could not have been found guilty beyond a reasonable doubt on the paucity of other evidence." *Gracia*, 522 F.3d at 604 (explaining that other than the improperly bolstered testimony from government agents there was no significant evidence against the defendant). Here, as in *United States v. Ramirez-Velasquez,* substantial evidence of guilt in the form of inconsistencies in the defendant's testimony and circumstantial evidence warrant affirming the conviction. 322 F.3d at 875.

For the aforementioned reasons, the judgment of the district court is AFFIRMED.