# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-10630
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

December 1, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

OGIESOBA CITY OSULA,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:12-CR-132-5

Before JOLLY, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Ogiesoba City Osula was convicted by a jury of conspiracy to defraud the Government with respect to claims and to commit wire fraud, mail fraud, and bank fraud, making false claims upon the United States, fraud in connection with access devices, and aggravated identity theft. He was sentenced to a total of 210 months of imprisonment.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-10630

Osula argues that the district court erred in refusing to grant a mistrial on the basis that the jury improperly was exposed to an external influence that affected its ability to deliberate objectively: the indictment, which set forth that he was in custody at the time that the indictment was returned.  However, the record does not support that the reference to Osula's custodial status affected his substantial rights.  *See Puckett v. United States*, 556 U.S. 129, 135 (2009); *United States v. Garcia*, 567 F.3d 721, 727 n.2 (5th Cir. 2009).  The disclosure of Osula's custodial status was unintentional and limited, did not necessarily connote his guilt, *see Leonard v. United States*, 386 F.2d 423, 425 (5th Cir. 1967), and concerned his pretrial detention for the instant offense instead of implicating a prior conviction or suggesting continuing detention, *see United States v. Barcenas*, 498 F.2d 1110, 1113 (5th Cir. 1974).  Further, the fact that Osula was in custody was incidental to the matters at trial, and the district court instructed the jury that the indictment was not evidence of guilt and that Osula was presumed innocent.  *See Zafiro v. United States*, 506 U.S. 534, 540 (1993).  Moreover, there was overwhelming evidence of Osula's guilt adduced at trial.  Thus, Osula has not shown how the reference to his pretrial custodial status affected the outcome of the proceedings.  *See Puckett*, 556 U.S. at 135.

Osula further contends that his sentence was unreasonable because the district court improperly calculated the amount of loss and the total number of victims.  He maintains that the district court incorrectly attributed to him as relevant conduct the actions of his co-conspirators.  The determinations of the loss amount and number of victims are findings of fact that we review for clear error.  *See United States v. Njoku*, 737 F.3d 55, 75 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 2319 (2014).

The record reflects that the district court determined the amount of loss after reviewing ample evidence, including testimony from the case agent, and

that no loss amount was included unless there were multiple connections to the conspirators. The conspirators' actions – i.e., obtaining stolen identifying information, using the information to file tax returns using falsely procured Electronic Filing Identification Numbers, and directing the resulting refunds to fraudulently secured accounts and prepaid debit cards – conformed with Osula's understanding of the conspiracy, were related to the conspiracy that gave rise to his conviction, and concerned conduct arising out of the conspiracy in which he participated; the criminal conduct was undertaken by members of the conspiracy, was identical to the acts in which Osula and the conspiracy engaged, and was committed for the same purpose. To the extent that Osula was responsible for the conduct of the related scheme operating in Cincinnati, Ohio, the evidence reflected that Osula knew that his group and the Cincinnati scheme arranged to collaborate to effectuate their crimes. Thus, the district court did not clearly err in determining that Osula's loss amount included the relevant conduct of his co-conspirators. *See United States v. Hammond*, 201 F.3d 346, 351 (5th Cir. 1999); *Njoku*, 737 F.3d at 75; U.S.S.G. § 1B1.3(a)(1)(A), (B), & comment. (n.2).

Likewise, the district court did not clearly err in its determination of the total number of victims. *See United States v. Ford*, 558 F.3d 371, 377 (5th Cir. 2009); *Njoku*, 737 F.3d at 75. To the extent that Osula argues that the district court wrongly failed to calculate the loss for each victim, his argument is misguided; the instant case involved the use of fraudulently obtained means of identification and, thus, whether a person sustained a loss is immaterial to whether he is a victim for purposes of the adjustment. *See* § 2B1.1, comment. (n.4(E)). The record otherwise supports, for the reasons detailed, that Osula was responsible for the victims generated by the actions of his co-conspirators

No. 14-10630

because it was relevant conduct. *See Hammond*, 201 F.3d at 351; § 1B1.3(a)(1)(A), (B), & comment. (n.2).

Finally, Osula contends that the district court erred in applying a four-level adjustment under § 3B1.1(a) on the basis that he was a leader or organizer of the offense. However, he has not shown that the district court clearly erred. *See United States v. Gonzales*, 436 F.3d 560, 584 (5th Cir. 2006). The record reflects that Osula supplied assets needed for the conspiracy; Osula had access to the identifying information that was crucial to the scheme and controlled procurement of the information. *See* § 3B1.1, comment. (n.4). Osula also exercised control over bank accounts in which tax refunds were diverted; Osula decided how the accounts were accessed and managed and ran the bank-fraud aspect of the conspiracy. *See id.*; *United States v. Ochoa-Gomez*, 777 F.3d 278, 282-83 (5th Cir. 2015). Further, Osula received a greater share of the profits than other conspirators, was represented as a leader of the conspiracy, and enabled an expansion of the conspiracy by negotiating an agreement with the Cincinnati group. § 3B1.1, comment. (n.4). To the extent that Osula did not control the action of another individual, that claim is unavailing because he exercised authority over the property, assets, or activities of the conspiracy. *See Ochoa-Gomez*, 777 F.3d at 282-83; § 3B1.1, comment. (n.4). Likewise, the fact that Osula may not have been the ultimate leader of the conspiracy is not dispositive. *See United States v. Rodriguez*, 897 F.2d 1324, 1327 (5th Cir. 1990).

AFFIRMED.