# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 23, 2024

Lyle W. Cayce
Clerk

———————

No. 23-40239

———————

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

VICTOR JAVIER LOPEZ-LLAMAS,

*Defendant—Appellant*.

———————————————————

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:18-CR-205-10

———————————————————

Before DENNIS, WILLETT, and DUNCAN, *Circuit Judges*.

PER CURIAM:[*]

Victor Javier Lopez-Llamas was arrested for participating in a multi-year drug-trafficking conspiracy. He was convicted by a jury for conspiring to possess with the intent to distribute cocaine. Llamas appealed that conviction, arguing that five errors warrant reversal individually and in the aggregate. We disagree and AFFIRM.

———————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 23-40239

I

In 2019, Victor Javier Lopez-Llamas was arrested as he and his wife, Ruth Margarita Martinez-Garcia, crossed into the United States from Mexico. He was charged with conspiring to possess with the intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846 in Count Two of the indictment. Other individuals, but not Llamas, were named in Count One for conspiring to possess with the intent to manufacture and distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846. Llamas pleaded not guilty.

During a four-day jury trial, the Government called eight witnesses and presented audio recordings, photographs, and other records establishing that Llamas participated in a drug-trafficking conspiracy with the Cártel del Jalisco Nuevo Generación, a cartel with operatives in Mexico and Texas. The Government showed that Llamas knew Francisco Mejia-Chavez—a cocaine supplier for the cartel—for twenty-five years and that they made frequent trips across the United States–Mexico border. The Government also put on evidence of an attempted drug deal between two confidential sources and Llamas, his wife, and another man from the conspiracy (though the Drug Enforcement Administration ultimately found no drugs and let Llamas and his group go). In addition, two co-conspirators testified against Llamas. Marco Antonio Rodriquez-Izazaga testified that Mejia-Chavez and Llamas sought his help in distributing cocaine in Dallas, that Mejia-Chavez and Llamas were partners in the cartel, and that Llamas was "in charge of the [cocaine] transport." Another member of the conspiracy and Government cooperator, Magdalena Chavez, corroborated Izazaga's account.

Llamas testified in his own defense and called no other witnesses. He maintained that he "ha[d] never been involved in transporting cocaine or methamphetamine to the United States," and said that he was a mechanic,

that he raced cars, and that he traveled to the United States for car shows. He explained that he feigned interest in the Government's attempted drug deal so that he could recover a racecar that was stolen from him.

The district court instructed the jury as to Counts One and Two. The jury found Llamas guilty of both. After realizing that Llamas was not named in Count One of the indictment, the district court acquitted him of Count One and sentenced him to 188 months' imprisonment on Count Two.

Llamas appealed his conviction and sentence. Llamas's notice of appeal was untimely under Federal Rule of Appellate Procedure 4(b)(1)(A), but the Government has waived its objection. Because Rule 4(b)(1)(A) is not jurisdictional, we accept the Government's waiver and reach the merits. *See United States v. Martinez*, 496 F.3d 387, 388–89 (5th Cir. 2007) ("Rule 4(b)(1)(A)'s time limit is not dictated by statute, and as *Bowles* [*v. Russell*, 551 U.S. 205 (2007)] teaches, it is not jurisdictional."); *United States v. Fearce*, 455 F. App'x 528, 529 (5th Cir. 2011) ("[T]he time limit for filing a criminal appeal is not jurisdictional and can be waived.").

Llamas raises five separate errors: prosecutorial misconduct because he was tried on a count for which he was not indicted; questions about Llamas's wife's indictment and fugitive status; admission of several news articles; questions about whether other witnesses lied; and comments about defense counsel "trying to trick" a witness. We review each asserted error in turn, before addressing whether the purported individual errors in the aggregate warrant reversal.

## II

Llamas argues for the first time on appeal that the prosecutor committed misconduct and violated his right to a fair trial under the Sixth Amendment by subjecting him to evidence of a methamphetamine conspiracy (Count One) that was inadmissible to prove the cocaine

conspiracy (Count Two). He concedes that review is for plain error. To prevail, he must show (1) an error (2) that is "clear or obvious" and that (3) affected his "substantial rights." *See Puckett v. United States*, 556 U.S. 129, 135 (2009). If he makes this showing, we may remedy the error—but only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

As the Government acknowledges, Llamas undeniably suffered an error on Count One because he could not be convicted of an uncharged offense. *United States v. Greenlaw*, 84 F.4th 325, 358 (5th Cir. 2023), *cert. denied*, No. 23-631, 2024 WL 2116272 (U.S. May 13, 2024) ("[A] court cannot permit a defendant to be tried on charges that are not made in the indictment against him." (alterations in original) (quoting *Stirone v. United States*, 361 U.S. 212, 217 (1960))). But the district court remedied this error by acquitting him of his Count One conviction.

So we consider alleged errors only as to Count Two. Llamas has not shown that he was denied a fair trial on Count Two because he was also tried on Count One. Relying on Federal Rule of Evidence 404(b), he "asserts that the evidence of methamphetamine would not and should not have come in" had he been tried on only Count Two (cocaine conspiracy). But he fails to "specifically identify" evidence that would be admissible as to Count One but not as to Count Two. *See United States v. West*, 22 F.3d 586, 594 n.24 (5th Cir. 1994) ("We note that West's failure to specifically identify those portions of the record relevant to his claim of [Rule 404(b)] error borders on waiving any claim of error." (citing former Fed. R. App. P. 28(a)(4), what is now Fed. R. App. P. 28(a)(8)(A))); *see also United States v. Moreno*, 540 F. App'x 276, 276–77 (5th Cir. 2013) (per curiam) ("Moreno does not identify with specificity any instance in which the district court refused to admit into evidence the criminal conviction of any Government witness.");

*Zapet v. Ashcroft*, 75 F. App'x 244, 245 (5th Cir. 2003) (per curiam) ("Zapet does not identify the particular documentary evidence that he alleges the BIA did not consider, nor does he explain why the specific evidence was pivotal to his case. Zapet has not shown error."). This "borders on [forfeiture] of any claim of error." *West*, 22 F.3d at 594 n.24.

Regardless, "[n]o facts appear . . . to convince" us that there is clear or obvious error as to Count Two. *See United States v. Meadows*, 523 F.2d 365, 368 (5th Cir. 1975) ("We can find obvious error here only if the facts in the record compel the conclusion that the seizure was illegal. No facts appear in this record to convince us that the evidence should have been suppressed . . . ."). It is not clear that all evidence relating to the alleged methamphetamine conspiracy "was simply inadmissible in circumstances where [Llamas] was only charged with the cocaine conspiracy." Llamas invokes Rule 404(b), which "limits the admissibility of extrinsic evidence, but not intrinsic evidence." *United States v. Garcia*, 567 F.3d 721, 727 (5th Cir. 2009). "Evidence of an act is intrinsic when it and evidence of the crime charged are inextricably intertwined, or both acts are part of a single criminal episode, or it was a necessary preliminary to the crime charged." *Id.* (quoting *United States v. Sumlin*, 489 F.3d 683, 689 (5th Cir. 2007)). If evidence is extrinsic, the district court must determine whether (1) "the extrinsic evidence is relevant to an issue other than the defendant's character" and (2) "the evidence . . . possess[es] probative value that is not substantially outweighed by its undue prejudice and . . . meet[s] the other requirements of Rule 403." *Id.* (quoting *United States v. Sanders*, 343 F.3d 511, 518 (5th Cir. 2003)).

The methamphetamine evidence here is intrinsic. The cartel's methamphetamine and cocaine ventures were "commingled," *see United States v. Sudeen*, 434 F.3d 384, 388–89 (5th Cir. 2005) (holding that evidence of the insulin scheme was intrinsic to evidence of the fertilizer scheme

because the defendant "commingled funds between the two"), and the evidence involving methamphetamine gave background on the cartel's methods and personnel, all of which were relevant to understanding the scope and structure of the cartel's cocaine conspiracy. *See United States v. Navarro*, 169 F.3d 228, 233 (5th Cir. 1999) (finding that "the evidence of drug operations and organization in Arkansas [postdating the charged conspiracy] demonstrated the continuing nature of the organization, the structure of the organization, and the continuing contact between Edmondson, Navarro, and Ferguson" was intrinsic because it was "'inextricably intertwined' with the evidence used to prove the charges of possession and conspiracy of methamphetamine"). The other methamphetamine evidence explained how Izazaga was caught accepting methamphetamine and then induced to cooperate with the Government. *See Navarro*, 169 F.3d at 233. Evidence about Izazaga's cooperation is relevant to Count Two because Izazaga testified about the cartel's structure and Llamas's role in the cocaine conspiracy.

Accordingly, Llamas has not shown clear or obvious error in the admission of this evidence.

## III

For the first time on appeal, Llamas accuses the Government of (1) violating Federal Rule of Criminal Procedure 6(e)(4) by asking Llamas about the existence of a sealed indictment against his wife and co-defendant, Martinez-Garcia; (2) imputing her guilt to him; and (3) improperly referring to an out-of-court conversation with Llamas in which the prosecutor told Llamas that his wife was a fugitive. We review for plain error and find none.

First, Llamas has not shown that the prosecutor plainly erred under Rule 6(e)(4). Llamas cites no case in which a defendant invoked Rule 6(e)(4) to forbid a prosecutor's inquiry into a sealed charge, much less a sealed

charge against a co-defendant, and much less after the defense already disclosed the charge. This isn't surprising. Although Rule 6(e)(4) has some benefits for defendants, especially informants, it's largely a tool wielded by and for the Government. *See, e.g.*, *United States v. Rogers*, 781 F. Supp. 1181, 1190 (S.D. Miss. 1991) (noting that "the government's decision to seal an indictment is found to have been proper" when it is "based on a legitimate prosecutorial objective"); *United States v. Khoury*, No. 4:17-MC-2553, 2018 WL 2864413, at *4 (S.D. Tex. June 11, 2018) ("Reasons for sealing an indictment include: (1) to prevent a broader, ongoing investigation from being compromised; (2) to protect an informant or witness; (3) to prevent the defendant from having notice of the charges and opportunity to flee."). Where we have "not previously addressed an issue," as here, we "ordinarily do not find plain error." *United States v. Evans*, 587 F.3d 667, 671 (5th Cir. 2009) (internal quotation marks and citation omitted).

Second, Llamas has not shown that the Government imputed his wife's guilt to him. The prosecutor mentioned Martinez-Garcia's charge not as substantive evidence of Llamas's guilt but to "discredit his tale of a stolen racecar, especially by highlighting his motives to lie"—namely, to avoid implicating his wife. *See United States v. Samak*, 7 F.3d 1196, 1199 (5th Cir. 1993) (per curiam) ("[T]he record does not indicate[] that the Government attempted to use the guilty plea as substantive evidence of Samak's guilt.").

Finally, the district court did not plainly err in permitting the prosecutor to reference an out-of-court conversation. Even if it was a clear or obvious error, Llamas fails to show it substantially affected his rights. *See Puckett*, 556 U.S. at 135. First, the district court instructed the jury that the prosecutor's statements, questions, and arguments were not evidence, *see* Fifth Circuit Pattern Jury Instructions (Criminal Cases) § 1.06, and courts presume that juries follow instructions. *See, e.g.*, *Samia v. United States*, 599 U.S. 635, 646 (2023). Llamas has not shown that

the jury ignored the district court's instruction. *See, e.g.*, *United States v. Williams*, 343 F.3d 423, 438 (5th Cir. 2003). Second, the prosecutor also put on other substantial evidence of Llamas's guilt, making it unlikely that the prosecutor's reference to their pretrial conversation "had a substantial impact on the jury's verdict." *United States v. Robins*, 978 F.2d 881, 889 (5th Cir. 1992); *see also United States v. Dong Dang Huynh*, 420 F. App'x 309, 318 (5th Cir. 2011) (per curiam); *United States v. Osula*, 623 F. App'x 257, 257–58 (5th Cir. 2015) (per curiam).

Thus, Llamas has not shown plain error.

IV

Llamas also argues that the district court plainly erred in admitting into evidence newspaper articles and press releases stating that drugs were smuggled in trucks' oil pans. But Llamas "waived his objection to the admission of the [articles and press releases]" and "cannot now argue that [their] admission was error" when he "agreed to the admission" of those newspapers in the district court. *United States v. Ramirez-Velasquez*, 322 F.3d 868, 876–77 (5th Cir. 2003); *see also United States v. Hinton*, 235 F. App'x 223, 224 (5th Cir. 2007) (per curiam); *United States v. Garrison*, 380 F. App'x 423, 427 (5th Cir. 2010) (per curiam).

When the Government asked Llamas about the newspapers on cross-examination, Llamas's counsel did not object. And at the next recess, the Government said to the court, "We [referring to the Government and the defense] would -- and by agreement, we're going to agree that everything [up to Exhibit 83] is preadmitted even though they may not have been in the first offering." Aware that the newspapers were marked as Exhibit 82 and thus included in the exhibits to be admitted, Llamas's counsel responded, "That's consistent with our agreement, your Honor." Llamas thus waived his evidentiary argument, rendering it "entirely unreviewable" on appeal.

*United States v. Musquiz*, 45 F.3d 927, 931 (5th Cir. 1995). Thus, we need not address it further.

V

Llamas next argues that the district court plainly erred by permitting the prosecutor to ask Llamas if other witnesses had lied. Because Llamas did not object below, we again review for plain error.

The Government rightly concedes that these questions were clear or obvious error. *See Williams*, 343 F.3d at 437; *United States v. Thomas*, 246 F.3d 438, 439 & n.1 (5th Cir. 2001); *see also United States v. Chaparro-Luna*, 790 F. App'x 560, 566 (5th Cir. 2019) (per curiam); *United States v. Pittman*, 401 F. App'x 895, 898–99 (5th Cir. 2010) (per curiam). However, Llamas has not shown that his substantial rights were affected. To determine whether an individual's substantial rights were affected, we consider "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction." *United States v. Wyly*, 193 F.3d 289, 299 (5th Cir. 1999) (citation omitted).

As for the first factor, "the magnitude of the prejudicial effect, weighed in context," was small. *See Williams*, 343 F.3d at 438. The prosecutor at most asked five questions about the veracity of other witnesses or declarants. "Given the strident advocacy on both sides of this case and the numerous witnesses, pieces of evidence, and issues placed before the jury," we "cannot say that the prosecutor's [three to five] statements overshadowed what had come before and unduly prejudiced the Appellants' case." *United States v. Gallardo-Trapero*, 185 F.3d 307, 320–21 (5th Cir. 1999). Moreover, the prosecutor had already "skillfully and properly led" Llamas "to contradict directly the testimony of other witnesses," and thus Llamas "had already called these witnesses liars, albeit implicitly" before the

prosecutor asked at least some of these questions. *Williams*, 343 F.3d at 438. We have "previously held that the prejudicial effect of a remark like this is small." *Chaparro-Luna*, 790 F. App'x at 567 (citing *Williams*, 343 F.3d at 437).

Second, the district court instructed the jury that the prosecutor's questions and arguments were not evidence and that the jury alone was responsible for determining the credibility of each witness. *See* Fifth Circuit Pattern Jury Instructions (Criminal Cases) §§ 1.06, .09; *Williams*, 343 F.3d at 438; *Chaparro-Luna*, 790 F. App'x at 567; *Pittman*, 401 F. App'x at 899–900. We see nothing in the record indicating that the jury ignored these instructions. *See, e.g.*, *Williams*, 343 F.3d at 428. Moreover, "the instruction[s] immediately preceded the jury's deliberations, whereas the improper questioning occurred earlier in the trial." *See id.* (citing *Wyly*, 193 F.3d at 300). And, finally, the strength of the evidence against Llamas was substantial—with eight witnesses, including multiple co-conspirators' testimony, audio recordings, photographs, and other records of Llamas's participation in a drug trafficking conspiracy. *See Williams*, 343 F.3d at 438; *Chaparro-Luna*, 790 F. App'x at 567; *Pittman*, 401 F. App'x at 900. Accordingly, "[t]he questioning, though inappropriate, is not reversible error." *See Williams*, 343 F.3d at 438.

## VI

Llamas next argues that the district court erred by allowing the prosecutor to impugn defense counsel's integrity, pointing to two allegedly nefarious comments. First, on Izazaga's redirect, the prosecutor said that "defense counsel [was] trying to trick you" on cross-examination and that the indictment alleged specific start and end dates for the conspiracy. Defense counsel objected, and the district court sustained the objection. Second, and soon after, the prosecutor asked Izazaga, "So when defense

counsel is trying to limit you just to 2016, that's not being truthful to what this [i]ndictment says, correct?" Defense counsel did not object.

Even though the district court sustained Llamas's objection to the first statement—that defense counsel was trying to "trick" Izazaga—and instructed the jury that they "must disregard" any questions to which it sustained an objection, *see* FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL CASES) § 1.06, Llamas maintains that the court's error was "clear or obvious" because the "prosecutor clearly denigrated defense counsel in the presence of the jury." But Llamas has not shown that the jury ignored the district court's instruction. *See United States v. Alaniz*, 726 F.3d 586, 614 (5th Cir. 2013). And he did not object to the district court's handling of his objection or request that the district court declare a mistrial. *See United States v. Salinas*, 480 F.3d 750, 755–56 (5th Cir. 2007). Thus, he "effectively received all of the relief that he requested from the district court." *Id.* at 756.

In requesting that we nonetheless reverse his conviction, Llamas asks us "to go against the implicit judgment of both the trial court and [his] trial counsel that the trial court's corrective action was adequate and appropriate." *Id.* (citation omitted); *see also Alaniz*, 726 F.3d at 616. In these circumstances, we review for plain error. *See Salinas*, 480 F.3d at 756; *see also United States v. Carter*, 953 F.2d 1449, 1466 (5th Cir. 1992) ("Because logically there is little difference between a case that comes to us where no objection has been made to the alleged impropriety and one where no further objection has been made to the trial judge's handling of an impropriety, we concluded . . . that the plain-error standard of review should apply."). And because Llamas did not object below to the second statement—that defense counsel was "not being truthful" to the indictment—we also review it for plain error.

Llamas has not shown an error, let alone a clear or obvious one. Although "[n]o prosecutor . . . may impugn the integrity of a particular lawyer or that of lawyers in general, without basis in fact, as a means of imputing guilt to a defendant," *United States v. Valas*, 822 F.3d 228, 245 (5th Cir. 2016) (alteration in original) (internal quotation marks and citation omitted), a prosecutor commits no error by "attack[ing] the strength of the defense on the merits," *United States v. Bernard*, 299 F.3d 467, 488 (5th Cir. 2002). Here, the prosecutor criticized defense counsel's allegedly flawed and misleading view of the dates in the indictment, not defense counsel's integrity.

Calling the defense's arguments a "trick" or "untruthful" is no different from calling them a "rabbit trail" or a "red herring," comments we have previously held not to be error, "much less [a] plain" one. *See id.* at 487–88. Our reasoning in a prior opinion applies equally here: A prosecutor's reference to defense counsel's "trickery" is directed at the defense's arguments and does not impugn "the integrity of defense counsel." *See United States v. Hernandez*, 455 F. App'x 517, 519 (5th Cir. 2011) (per curiam). And because the prosecutor "directly linked his assertions" to the language in the indictment, he was not impermissibly testifying, *see United States v. Thompson*, 482 F.3d 781, 786 (5th Cir. 2007), or engaging in "inflammatory, irrelevant, or impermissible bolstering," *see United States v. Stallings*, No. 19-11300, 2023 WL 3534445, at *7 (5th Cir. May 18, 2023), *cert. denied*, 144 S. Ct. 366 (2023) (defining "bolstering" as "a largely emotional appeal to the jury to credit [certain] testimony"). Accordingly, no error occurred.

## VII

Finally, Llamas invokes the cumulative-error doctrine to argue that even if the alleged errors do not require reversal individually, they do in the

aggregate. *See United States v. Munoz*, 150 F.3d 401, 418 (5th Cir. 1998). Under that doctrine, "an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *Id.* But "[t]he doctrine justifies reversal only in the unusual case in which synergistic or repetitive error violates the defendant's constitutional right to a fair trial." *United States v. Delgado*, 672 F.3d 320, 344 (5th Cir. 2012) (en banc).

Llamas has, at most, demonstrated only one non-reversible error—the prosecutor's questions to Llamas about other witnesses' veracity. Because Llamas has not successfully demonstrated any other error, and because "non-errors have no weight in a cumulative error analysis, there is nothing to accumulate." *Id.*

\* \* \*

Contrary to Llamas's arguments, none of the errors he asserts warrants a new trial. Indeed, only one of his asserted errors was actually an error—and even then, it did not affect his substantial rights. And Llamas cannot try to aggregate non-errors to vacate his conviction and re-do the trial in hopes of a better outcome.

We AFFIRM.